Basil P. Fthenakis, Esq. (88399)
CRITERION LAW
2225 E. Bayshore Road, Suite 200
Palo Alto, California 94303
Tel. (650) 352-8400
Fax. (650) 352-8408

Of counsel:

David S. Godkin (Admitted *pro hac vice*)
James Kruzer (Admitted *pro hac vice*)
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA 02210
(617) 307-6100
godkin@birnbaumgodkin.com
kruzer@birnbaumgodkin.com

Attorneys for Plaintiff,
SIX4THREE, LLC, a Delaware
limited liability company

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIX4THREE, LLC, a Delaware limited liability company, | Case No. 3:17-cv-00359-WHA |
| Plaintiff, | NOTICE OF MOTION TO REMAND FOR LACK OF FEDERAL JURISDICTION AND AWARD OF FEES AND COSTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| v. | |
| FACEBOOK, INC., a Delaware corporation and DOES 1 through 50, inclusive | |
| Defendants. | Date: February 16, 2017 Time: 8:00AM Ctrm: 8 Judge: Honorable William H. Alsup |

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I. BACKGROUND ............................................................................................................... 1

    A. Facebook's Anti-Competitive Conduct.................................................................... 1

    B. Plaintiff's Causes of Action ..................................................................................... 2

    C. Events Leading Up to Facebook's Petition for Removal ......................................... 3

II. NO NECESSITY OF REACHING A FEDERAL QUESTION ......................................... 4

    A. Plaintiff's Reliance on the "Unlawful" Prong of Cal. Bus & Prof. Code § 17200
       Does Not Require Reaching a Federal Question ...................................................... 4

    B. Plaintiff's Other State Law and Common Law Causes of Action Do Not Require
       Reaching a Federal Question) .................................................................................. 8

    C. Facebook Cannot Meet Its Burden Regarding Any of the Artful Pleading
       Requirements ......................................................................................................... 10

    D. Because Removal is Disfavored, Any Ambiguity Is Resolved Against Removal........... 14

III. PLAINTIFF HAS NOT TRIGGERED 28 U.S.C. § 1446(b)(3)...................................... 14

IV. PLAINTIFF IS ENTITLED TO RECOVER ITS COSTS AND ATTORNEYS'
    FEES .......................................................................................................................... 16

V. CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006) .................................................. 14

*Arco Environmental Remediation, L.L.C. v. Dep't of Health & Environmental Quality of the State of* Montana, 213, F.3d 1108 (9th Cir. 2000) ...................................... 11

*Boxer v. Accuray Inc.*, 906 F.Supp.2d 1012 (N.D. Cal. 2012) ......................................... 13

*Briggs v. First Nat'l Lending Servs.*, 2010 U.S. Dist. LEXIS 35639 (N.D. Cal. March 16, 2010) .............................................................................................................. 8, 11

*Busch v. Jakov Dulcich & Sons, LLC*, 2015 U.S. Dist. LEXIS 79325 (N.D. Cal. June 17, 2015) ........................................................................................................................ 16

*California v. ARC Am. Corp.*, 490 U.S. 93 (1989) ............................................................ 12

*California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004) ........................ 14

*California v. Guajardo*, 2011 U.S. Dist. LEXIS 3401 (N.D. Cal. Jan. 7, 2011) ................ 8

*California v. Pinnacle Sec. CA LP*, 746 F.Supp.2d 1129 (N.D. Cal. 2010) ...................... 7

*Carbonel v. ARA Loans and Realty, Inc.,* 2010 U.S. Dist. LEXIS 81991 (N.D. Cal. Aug. 12, 2010) ...................................................................................................... 10

*Castro v. Providian Nat'l Bank*, 2000 U.S. Dist. LEXIS 19062 (N.D. Cal. Dec. 29, 2000) ............................................................................................................................... 8

*Cortes v. Bank of America*, 2009 U.S. Dist. LEXIS 112815, 2009 WL 4048861 (C.D. Cal. Nov. 20, 2009) .......................................................................................................... 10

*Davis v. Weger Mort. Corp.*, 2010 U.S. Dist. LEXIS 80683 (C.D. Cal. June 22, 2010) ............... 8

*Dimidowich v. Bell & Howell*, 803 F.2d 1473 (9th Cir. 1986) ......................................... 6

*Gasu v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) ........................................................... 14

*Goff v. Dial & Assocs. PC*, 2015 U.S. Dist. LEXIS 7471 (C.D. Cal. Jan 22, 2015). ........ 10

*Golden 1 Credit Union v. H & B Group,* 2007 U.S. Dist. LEXIS 31142 (E.D. Cal. Apr. 27, 2007) ................................................................................................................... 14

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ...... 10, 12

*Graybill-Bundgard v. Standard Ins. Co.*, 793 F. Supp. 2d 1117 (N.D. Cal. 2011) .......... 15

*Hansen v. Blue Cross of Cal.*, 891 F.2d 1384 (9th Cir. 1989) ......................................... 13

*Hendricks v. Dynegy Power Marketing*, 160 F. Supp. 2d 1155 (S.D. Cal. 2001) .... 4, 5, 12

*Holliman v. Kaiser Foundation Health Plan*, 2006 U.S. Dist. LEXIS 14627 (N.D. Cal. Mar. 14, 2006) ..................................................................................................... 8

*Iniquez v. Vantium Capital, Inc.*, 2013 U.S. Dist. LEXIS 41776 (N.D. Cal. Mar. 25, 2013) ............................................................................................................................... 8

*Klussman v. Cross-Country Bank*, No. C-01-4228-SC, 2002 WL 1000184 (N.D. Cal. May 15, 2002) ................................................................................................................. 10

*Kvam v. Chase Home Fin. LLC*, 2012 U.S. Dist. LEXIS 77218 (N.D. Cal. June 4, 2012) ............................................................................................................ 10

*Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033 (9th Cir. 2003) ............... 4, 5, 11, 13

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005). ....................................... 16

*Martinez ex rel. Morales v. City of Fairfield*, 2008 U.S. Dist. LEXIS 73674 (E.D. Cal. Aug. 13, 2008) .................................................................................................. 9

*Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443 (9th Cir.1992). ..................... 16

*National Credit Reporting Ass'n v. Experian Info. Solutions, Inc.*, U.S. Dist. LEXIS 17303 (N.D. Cal. July 21, 2004) ....................................................... 4, 5, 6, 13

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. Nev. 2012) .......................... 12, 14

*Papke v. Network Capital Funding Corp.*, 2013 U.S. Dist. LEXIS 66566 (C.D. Cal. May 9, 2013) ............................................................................................................ 9

*Perez v. Nidek Co. Ltd.*, 657 F. Supp. 2d 1156 (S.D. Cal. 2009) ............................... 10

*Pope v. Wells Fargo Bank*, 2010 U.S. Dist. LEXIS 125341, 2010 WL 8388301 (E.D. Cal. Nov. 29, 2010) ...................................................................................................... 10

*Rains v. Criterion Sys. Inc.*, 80 F.3d 339 (9th Cir. 1996) ....................................... 9

*Redwood Theatres, Inc. v. Festival Enterprises, Inc.*, 908 F.2d 477 (9th Cir. 1990) .. 11, 12

*Roskind v. Morgan Stanley Dean Witter & Co.*, 165 F.Supp.2d 1059 (N.D Cal. Apr. 11, 2001) ....................................................................................................................... 8

*Salveson v. Western States Bankcard Asso.*, 731 F.2d 1423 (9th Cir. 1984) .................... 12

*Self v. Gen. Motors Corp.*, 588 F.2d 655 (9th Cir. 1978). ....................................... 15

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) ........................................ 14

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938) ............................. 14

*Sullivan v. First Affiliated Secur., Inc.* 813 F.2d 1368 (9th Cir. 1987) ........................ 13

*Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002) .................................. 14

*Watson v. Buck*, 313 U.S. 387 (1941) ...................................................................... 12


## **Other Authorities**

28 U.S.C. § 1446 ........................................................................................... 4, 14, 15

28 U.S.C. § 1447 ........................................................................................... 4, 16, 17

Cal. Bus. & Prof. Code § 17200 ........................................................................... 2, 3

Cal. Bus. & Prof. Code § 17500 ........................................................................... 7, 9

Cal. Bus. & Prof. Code § 16600 ........................................................................... 7

Cal. Bus. & Prof. Code § 16720 ........................................................................... 5, 6, 15

Cal. Civ. Code § 1750 ........................................................................................ 7

Cal. Civ. Code § 1760 ........................................................................................ 7

Cal. Civ. Code § 1770 .......................................................................................... 7

Mich. Comp. Law § 445.772 ............................................................................... 7

Mich. Comp. Law § 445.773 ............................................................................... 7

N.Y. Gen. Bus. Law § 340 ................................................................................... 7

N.Y. Gen. Bus. Law § 349 ................................................................................... 7

**NOTICE OF MOTION AND MOTION**

NOTICE IS HEREBY GIVEN to the Court and all counsel of Record that on February 16 at 8:00AM in Courtroom 8 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, Six4Three, LLC ("643") will move the Court for an order to remand this matter to the Superior Court of California, County of San Mateo.

This motion is made on the grounds that Plaintiff has not brought any causes of action that necessarily require resolution of federal law. Plaintiff filed its original Complaint in the Superior Court of San Mateo County on April 10, 2015 and filed its Second Amended Complaint in that court on February 26, 2016, nearly a year ago. Plaintiff proceeded under four causes of action, three of which are found in common law and one of which relies upon California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 *et seq*. Plaintiff has not asserted that it intends to pursue a violation of federal law. Further, Plaintiff's reliance on the "unlawful" prong of §17200 does not require the Superior Court to reach a federal question. Defendant's removal was also untimely. Defendant removed this matter many months after the Second Amended Complaint was filed, one day before its deadline to serve by mail its motion for summary judgment and as the parties were waiting for the Superior Court to resolve a discovery dispute in which Plaintiff seeks to compel electronic files of Facebook's key executives, including Chief Executive Mark Zuckerberg. For the reasons discussed below, the case should be remanded, and Plaintiff should be awarded its costs, including attorneys' fees.

The motion will be based on this notice, memorandum of points and authorities, and Declaration of David S. Godkin, Esq., and all pleadings, records, files in this action, upon oral and documentary evidence to be presented at the hearing of the motion, and upon any other material which may properly come before the Court at or before the hearing on the motion.

Dated: January 27, 2017                    CRITERION LAW

                                           BIRNBAUM & GODKIN, LLP


                                           By:  */s/ David S. Godkin*
                                                 David S. Godkin (*pro hac vice*)
                                                 Basil P. Fthenakis
                                                 James E. Kruzer (*pro hac vice*)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     BACKGROUND

### A.     Facebook's Anti-Competitive Conduct

This matter concerns a pattern of behavior undertaken by Defendant Facebook, Inc. ("Defendant" or "Facebook") over at least a seven-year period starting some time around or after its decision to launch its own operating system upon which software companies could build applications ("Facebook Platform") and which amounts to a classic "bait and switch" tactic barred by California law. Beginning around May 24, 2007 and extending until at least April 30, 2014, Facebook engaged in a campaign of explicit promises, enticements and representations with the specific aim of inducing tens of thousands of software developers ("Developers") like Plaintiff Six4Three, LLC ("Plaintiff" or "643") to develop applications for Facebook Platform. As part of this deliberate campaign of inducement, Facebook made repeated official representations that Developers would have a level playing field, fair competition and opportunity to build businesses. Facebook explicitly stated on numerous occasions that it would permit software companies to build applications competitive both with Facebook and with applications built by larger software companies that paid Facebook substantial sums of money to advertise on Facebook-owned properties. Facebook repeatedly stated in official policy documents, announcements, and meetings over many years that it would take no action to provide an unfair advantage to certain companies at the expense of others.

Facebook's campaign was part of a calculated strategy to drive Facebook's own growth by leveraging the hard work of Developers. Indeed, at the time Facebook launched Facebook Platform, it had less than 25 million users. By 2014, once Facebook had secured over 1.3 billion users and cemented its position as a dominant global economy, Facebook decided it would prefer to no longer compete with Developers around certain types of applications, so it reversed course and broke its promise of equal access, fair competition, and the opportunity to build a business after Developers had reasonably relied on this promise for many years. This

decision, implemented on April 30, 2015, made it impossible for tens of thousands of small software companies to recoup or profit from their investments, while ensuring that Facebook and certain large software companies acting in concert with Facebook would exclusively reap the benefits of Developers' investments in a wide range of applications on Facebook Platform.

The application categories in which Facebook colluded with other large companies to shut out small software businesses range from contacts and calendar management, photo sharing, video streaming, messaging, lifestyle, music, books, utility and many other software application categories. Upon executing the "switch" in its "bait and switch" campaign, Facebook entered into numerous pay-to-play agreements and engaged in other actions in concert with large software developers that are prohibited by California law and other state laws. Specifically, Facebook shut down access to Facebook Platform, which it had promised for years would be available on a fair and open basis, to all companies except those that had the financial wherewithal to enter into special arrangements advantageous to Facebook.

### B. Plaintiff's Causes of Action

643 filed suit against Facebook on April 10, 2015 in the Superior Court of California, County of San Mateo (the "Superior Court"). The operative pleading, 643's Second Amended Complaint, was filed on or about February 26, 2016. See Declaration of David S. Godkin, ("Godkin Decl."), Exhibit 1. Facebook filed a Demurrer, which the Superior Court overruled on June 30, 2016 as to four of the five causes of action set forth in the Complaint, noting that "Plaintiff has specifically alleged that it was a victim to a Facebook practice/scheme to lure in developers, generate additional advertising revenue by enhancing the user's experience and then monopolize for itself the market for image search capabilities." See Godkin Decl., Exhibit 2. The four causes of action in which the Court overruled Facebook's Demurrer are: (1) violation of California Business and Professions Code §§ 17200, *et seq.* ("UCL"); (2) negligent misrepresentation; (3) intentional interference with contract; and (4) intentional interference with prospective business relations. The Superior Court case was originally set for trial on March 13, 2017. The Superior Court extended the trial date to May 15, 2017 at Facebook's request after Facebook changed counsel. Under this new trial date, Facebook's deadline for

filing motions for summary judgment was January 25, 2017, one day before Facebook filed its removal petition.

### C.    <u>Events Leading Up to Removal Petition</u>

Neither Plaintiff's Second Amended Complaint nor any other pleadings or communications from Plaintiff in this matter have asserted federal causes of action or relied upon federal laws in asserting state or common law causes of action. As of this time, Plaintiff has not been required by the Superior Court to assert the basis for its UCL violations that it intends to pursue at trial.

On December 13, 2016, Facebook propounded an interrogatory asking 643 to "State ALL laws that YOU contend Facebook's conduct violates RELATED TO YOUR CLAIM for violation of Business and Professions Code § 17200 et seq." In answer to this interrogatory seeking "ALL laws," Plaintiff appropriately and truthfully referenced a wide range of laws, including reference to numerous state, federal and common law violations as potentially accessible via the "unlawful" prong of the UCL. See Godkin Decl., <u>Exhibit 3</u>. Plaintiff provided a truthful, complete response to Facebook's interrogatory, a response that references federal law because Facebook asked Plaintiff to identify "ALL laws" that Facebook's conduct may have violated. To be clear, Facebook's interrogatory did *not* ask Plaintiff to identify "ALL laws Plaintiff intends to use as a basis for its UCL cause of action at trial". The interrogatory simply asked Plaintiff to identify "ALL laws" Facebook's conduct may have violated. Plaintiff's reference to federal law in this context in order to provide a truthful, complete response to an interrogatory cannot serve as the sole basis for Defendant's claim that reaching a federal question is necessary to resolve any of Plaintiff's causes of action. Again, for avoidance of doubt, Plaintiff has at no time indicated that it intends to pursue federal claims as the predicate violations of law under the UCL and, based on its causes of action, Plaintiff need not pursue federal claims.

On January 24, 2017, one day prior to its deadline to serve motions for summary judgment, Facebook filed its removal petition on the grounds that 643's response to Facebook's interrogatory seeking "ALL laws" its conduct may have violated was the first time it became

aware that federal questions could be implicated and that therefore this matter is removable under 28 U.S.C. § 1446(b)(3). Further, Facebook's removal comes days after it requested yet another delay of the summary judgment deadline so that Facebook could depose a non-party witness whose deposition it had improperly noticed for January 30, 2017. See Godkin Decl., Exhibit 4.

643 has informed Facebook that its removal is contrary to clear legal authority, including authority demonstrating that a federal question need not be reached here under the "unlawful" prong of the UCL. See Godkin Decl., Exhibit 5. Notwithstanding this information, Facebook has refused to remand this case to Superior Court and has forced Plaintiff to file this motion. Facebook has already moved the trial date and summary judgment deadline in Superior Court once over Plaintiff's objection. Facebook's litigation and delay tactics imperil 643's ability to resolve its claims at trial scheduled for May 15, 2017 in the Superior Court. In order to mitigate the damages caused to Plaintiff and the disruption to the Superior Court calendar, Plaintiff respectfully requests that this Court remand the case to Superior Court and, pursuant to 28 U.S.C. § 1447(c), award Plaintiff its expenses, including its attorneys' fees, in connection with filing this motion.

## II. NO NECESSITY OF REACHING A FEDERAL QUESTION

### A. Plaintiff's Reliance on the "Unlawful" Prong of Cal. Bus. & Prof. Code § 17200 Does Not Require Reaching a Federal Question

In its Notice of Removal, Facebook cites one authority, *National Credit Reporting Ass'n v. Experian Information Solutions Inc.*, for its position that 643's UCL claim arises under federal antitrust law. See Godkin Decl., Exhibit 4, at 3. *National Credit* denied a petition to remand on the ground that the "unlawful" prong of the UCL *necessarily* required reaching a federal question and the plaintiff in that case "could not have avoided borrowing Section 2 of the Sherman Act". *National Credit Reporting Ass'n v. Experian Info. Solutions, Inc.*, U.S. Dist. LEXIS 17303, at *9 (N.D. Cal. July 21, 2004). This matter is clearly distinguishable under *National Credit*'s own reasoning when distinguishing *Lippitt v. Raymond James Fin. Servs.*,

340 F.3d 1033 (9th Cir. 2003) and *Hendricks v. Dynegy Power Marketing*, 160 F. Supp. 2d 1155 (S.D. Cal. 2001). In *Lippitt*, defendant argued that plaintiff's UCL claims rested on the resolution of federal regulations. However, the Ninth Circuit "construed the complaint to allege fraud and deceptive advertising practices rather than any violation of federal regulation." *National Credit*, U.S. Dist. LEXIS 17303, at *14. The Ninth Circuit hinged its decision on the fact that the "state court need not inquire into NYSE regulations, or even refer to federal law, in the case before us." *Lippitt*, 340 F.3d at 1045. Similarly, in *Hendricks*, because plaintiff could access the "unlawful" prong of the UCL via the Cartwright Act, Cal. Bus. & Prof. Code § 16720, there was no necessity of reaching a federal question and plaintiff did not need to borrow federal law and seek an underlying violation of federal law in order to prevail on *any* of its causes of action. *Hendricks*, 160 F. Supp. 2d at 1156. This case is virtually identical to *Hendricks* and *Lippitt* because no cause of action asserted by Plaintiff relies upon federal law and no potential avenue through which Plaintiff can establish its causes of action necessarily entails addressing a federal question. In sharp contrast to *National Credit*, where plaintiff specifically alleged violations of federal antitrust laws, Plaintiff here has *not* "made a Sherman Act bed" and instead is free to rely upon numerous predicate violations of state and common law under the "unlawful" prong of the UCL. *National Credit*, U.S. Dist. LEXIS 17303, at *15.

Further, in *National Credit*, a host of other factors, none of which are present here, demonstrated the necessity of determining violations of Section 2 of the Sherman Act in order to satisfy the "unlawful" prong of the UCL. First, the *National Credit* plaintiff specifically asserted federal antitrust violations in its complaint. Second, that plaintiff alleged a single cause of action under California's UCL which, in order to be resolved, *required* reference to or interpretation of the Sherman Act for at least one of the three UCL prongs. Third, twenty-four of plaintiff's members had filed a nearly identical complaint specifically alleging Sherman Act violations, strongly suggesting that plaintiff had artfully pleaded its way out of a clear federal question. Fourth, that plaintiff's claims of anti-competitive behavior were "void of any allegations of an agreement or a conspiracy to act among defendants." *National Credit*, U.S. Dist. LEXIS 17303, at *9.

In sharp contrast to *National Credit*, Plaintiff here has never asserted federal antitrust violations and is not required to reach a federal question under any of the UCL prongs. Plaintiff has alleged specifically in its Second Amended Complaint that Facebook struck deals with certain large software companies to provide them a competitive advantage not available to small businesses after closing off access to its operating system. See Godkin Decl., Exhibit 1, ¶¶ 18-19, 103. Plaintiff has further alleged specifically in its Second Amended Complaint that Facebook repeatedly promised over many years that it would not enter into special relationships with large or preferred companies in order to slant the playing field and dampen fair competition. See Godkin Decl., Exhibit 1, ¶ 22-23. Further, Plaintiff has stated in its response to Facebook's interrogatory that in the ongoing course of reviewing Facebook's production, Plaintiff believes Facebook engaged in concerted action with certain preferred companies in the form of tying agreements and other prohibited conduct in order to systematically disadvantage small businesses and ensure various software markets would be dominated by a handful of companies.

Concerted action in the restraint of trade of this nature is prohibited under California's Cartwright Act, Cal. Bus. & Prof. Code § 16720. *Dimidowich v. Bell & Howell* makes abundantly clear that "a claim for conspiracy to monopolize is cognizable under the Cartwright Act because it alleges the requisite combination of actors." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1475 (9th Cir. 1986). Further, "[s]ince it is often difficult to show direct evidence of a combination or conspiracy, concerted action may be inferred from circumstantial evidence of the antitrust defendant's conduct and course of dealings. However, to survive a motion for summary judgment, a plaintiff must present evidence that tends to exclude the possibility that the alleged conspirators acted independently." *Dimidowich*, 803 F.2d at 1475. Plaintiff's discovery is ongoing in the Superior Court. Upon completion of discovery, which has been repeatedly delayed and obstructed by Facebook, Plaintiff is confident it will have evidence sufficient to support all of the foregoing elements to prevail under the Cartwright Act.

Plaintiff may also pursue the "unlawful" prong of the UCL via common law claims and California statutes. For example, Facebook's conduct repeatedly violates Business and

Professions Code §§ 17500 *et seq.*, which prohibits advertising goods or services that Facebook knew or should have known were likely to deceive. Facebook's conduct also repeatedly violates California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 et seq.) protecting consumers against unfair and deceptive business practices (Cal. Civ. Code § 1760) and various violations of Cal. Civ. Code § 1770. Finally, Facebook's conduct repeatedly violates Business and Professions Code §§ 16600 et seq. prohibiting contracts that restrain engagement in a lawful profession, trade or business of any kind.

Moreover, Plaintiff may pursue the "unlawful" prong of the UCL via other state laws, including, without limitation, state antitrust, anti-competition and false advertising laws. During a portion of the time in which Facebook's conduct alleged in the Second Amended Complaint occurred, Plaintiff's primary place of business was located in New York State. New York General Business Law § 340 expressly prohibits contracts or agreements for monopoly or in restraint of trade. Additionally, New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service. Further, Plaintiff and Defendant both generated revenues from customers or had a reasonable expectation of generating revenue from prospective customers in various other states with antitrust laws accessible via the "unlawful" prong of the UCL. See, e.g., Michigan Compiled Laws §§ 445.772 and 445.773. Finally, Plaintiff may pursue the "unlawful" prong of the UCL by reason of Facebook's tortious conduct, including but not limited to constructive fraud, negligent misrepresentation of material fact, intentional interference with contract and intentional interference with prospective business relations.

This Court has subsequently distinguished *National Credit* when a party is able to pursue the "unlawful" prong of the UCL without the necessity of determining violation of a federal law. In *California v. Pinnacle Sec. CA LP*, this Court ruled that "[b]ecause Plaintiff is able to show defendant acted unlawfully based on these state law provisions and without any references to federal law, remand is appropriate. *California v. Pinnacle Sec. CA LP*, 746 F.Supp.2d 1129, 1131 (N.D. Cal. 2010). In *Briggs v. First National Lending Services*, this Court held that "[s]ince the complaint's UCL claim is supported by numerous theories of

recovery under California law, the alleged violation of TILA is not considered a necessary element under *Rains.*" *Briggs v. First Nat'l Lending Servs.*, 2010 U.S. Dist. LEXIS 35639, *8 (N.D. Cal. March 16, 2010).[1] In this instance, where Plaintiff has shown no exclusive reliance on the Sherman Act for any prong of its UCL claim, remand is appropriate in accordance with *Hendricks, Lippitt, Pinnacle Sec., Briggs*, *Guajardo, Holliman* and others.

    In sum, Plaintiff has neither alleged any federal causes of action nor relied on any federal claims in asserting state or common law causes of action. Further, it is abundantly clear that Plaintiff's cause of action for "unlawful" conduct under the UCL does not necessarily require resolution of a federal question and indeed passes through a host of other state and common law questions. Plaintiff's only reference to federal law was in a non-voluntary response to Defendant's interrogatory seeking a truthful answer to all potential laws Facebook's conduct may have violated.[2] This cannot be a sufficient basis for removal to Federal Court.

**B.**     <u>**Plaintiff's Other State Law and Common Law Causes of Action Do Not Require Reaching a Federal Question**</u>

    In its Second Amended Complaint, Plaintiff seeks relief not only through the "unlawful" prong of the UCL, but through three other prongs as well: (1) unfair business acts or practices; (2) fraudulent business acts or practices; (3) unfair, deceptive, untrue or misleading advertising; and (4) business acts or practices prohibited by Cal. Bus. and Prof.

---

[1] *See also California v. Guajardo*, 2011 U.S. Dist. LEXIS 3401, at *7-9 (N.D. Cal. Jan. 7, 2011) ("a jury could find that defendants have violated Section 17200 without finding that defendants have violated the Code of Federal Regulations"); *Holliman v. Kaiser Foundation Health Plan*, 2006 U.S. Dist. LEXIS 14627, at *13 (N.D. Cal. Mar. 14, 2006) (finding no federal question jurisdiction where UCL claim was based on violations of California Labor code and FLSA); *Roskind v. Morgan Stanley Dean Witter & Co.*, 165 F.Supp.2d 1059, 1067 (N.D Cal. Apr. 11, 2001) (finding no federal question jurisdiction where UCL claim was based on "unfair" misrepresentations and violation of the National Association of Securities Dealers rules); *Castro v. Providian Nat'l Bank*, 2000 U.S. Dist. LEXIS 19062 at *8-9 (N.D. Cal. Dec. 29, 2000) (finding that even if plaintiffs were basing UCL claim on violation of federal Truth in Lending Act ("TILA") in addition to violations of California law, claim did not depend on question of federal law because jury could find violation of UCL without finding violation of TILA); *Davis v. Weger Mort. Corp.*, 2010 U.S. Dist. LEXIS 80683, at *1 (C.D. Cal. June 22, 2010) (remanding UCL claim because other state law was alleged to be violated in addition to TILA).
[2] Even in cases were plaintiff asserts federal claims, this Court has permitted plaintiff leave to amend its complaint unambiguously to remove federal claims, stating that in such circumstance remand would be appropriate. *See, e.g., Iniquez v. Vantium Capital, Inc.*, 2013 U.S. Dist. LEXIS 41776, at *7-9 (N.D. Cal. Mar. 25, 2013).

8

Code §§ 17500-17577.5. Further, Plaintiff has alleged three common law causes of action in its complaint: (1) negligent misrepresentation; (2) intentional interference with contract; and (3) intentional interference with prospective contractual relations. At no time, whether in its Second Amended Complaint or otherwise, has Plaintiff asserted or even referenced a federal law as its basis for pursuing any of these causes of action. Further, in its removal petition, Defendant has not asserted that any of these causes of action necessarily entail consideration of a federal question.

As a general matter, "when a claim can be supported by alternative and independent theories, one of which is a state law theory and one of which is a federal law theory - federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *See Rains v. Criterion Sys. Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).[3] In a "cause of action that sweeps in a broad range of predicate unlawful conduct…the fact that a federal law is 'borrowed' does not by itself establish jurisdiction in this court." *Papke v. Network Capital Funding Corp.*, 2013 U.S. Dist. LEXIS 66566, at *8 (C.D. Cal. May 9, 2013). As the *Papke* Court held: "Resolution of this case may ultimately hinge on a determination of FLSA non-compliance, or it may not, but this does not alter the fundamental nature of plaintiffs' state law claims." *Papke*, at *8.

Similarly, in *Goff v. Dial & Assocs.*, the Central District of California found that "[s]ince any of these alleged unlawful business practices may give rise to liability under the UCL, a jury could find that Defendant violated the UCL without also finding that it violated the federal RICO statute….Therefore, the federal law is not a necessary element of Plaintiff's claim. Federal question jurisdiction over a UCL claim is typically 'based on either the violation of a federal statute over which federal courts have exclusive jurisdiction or the violation of a single federal statute with no allegations of state law violations.' [*Pope*, at *3] Because Plaintiff has alleged viable non-federal alternatives to support his UCL claim, federal question

---

[3] *See also Martinez ex rel. Morales v. City of Fairfield*, 2008 U.S. Dist. LEXIS 73674, at *2 (E.D. Cal. Aug. 13, 2008) (even when federal law is incorporated by reference into a cause of action in the complaint, when the cause of action is supported by alternate theories based on state law alone, the cause of action does "not *necessarily* arise under federal law").

jurisdiction is not established." *Goff v. Dial & Assocs. PC*, 2015 U.S. Dist. LEXIS 7471, at *7 (C.D. Cal. Jan 22, 2015).

This same conclusion has been reached repeatedly by California's federal courts, including this Court and the Ninth Circuit. *See Kvam v. Chase Home Fin. LLC*, 2012 U.S. Dist. LEXIS 77218, at *5-6 (N.D. Cal. June 4, 2012) ("Here, Defendants removed Plaintiff's state law complaint on the grounds that the allegations, particularly the Section 17200 cause of action, contain some references to violations of federal law. 'In determining whether federal jurisdiction attaches to a state law claim that is predicated on violations of federal law, a court must examine whether the 'state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Cortes v. Bank of America*, 2009 U.S. Dist. LEXIS 112815, 2009 WL 4048861, at *2 (C.D. Cal. Nov. 20, 2009) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, at 314 (2005)).[4] Given that Plaintiff has not even asserted a federal law in relying on any of its other causes of action, the foregoing precedents clearly provide no justification for removal stemming from Plaintiff's other causes of action.

### C. Facebook Cannot Meet Its Burden Regarding Any of the Artful Pleading Requirements

Under the artful pleading doctrine, a federal court may exercise removal even if a federal question does not appear on the face of the complaint so long as one of three requirements is met: (1) federal law completely preempts state law; (2) the claim is necessarily federal in character; and (3) the right to relief depends on the resolution of a substantial,

---

[4] *See also Pope v. Wells Fargo Bank*, 2010 U.S. Dist. LEXIS 125341, 2010 WL 8388301, at *3 (E.D. Cal. Nov. 29, 2010) ("Courts have consistently found that federal question jurisdiction does not exist where a plaintiff has alleged a UCL claim based on violations of both state and federal law."); *Carbonel v. ARA Loans and Realty, Inc.*, 2010 U.S. Dist. LEXIS 81991, at *2 (N.D. Cal. Aug. 12, 2010) (granting motion to remand because the plaintiff's Section 17200 claim was predicated on violations of state law and three federal statutes, which were consequently not a "necessary part of the claim" and would just "shape the court's interpretation" of the claim) (citations and quotations omitted)); *Perez v. Nidek Co. Ltd.*, 657 F. Supp. 2d 1156, 1161 (S.D. Cal. 2009) ("Federal question jurisdiction is not created by the fact that Plaintiffs' state law claims under the CLRA and UCL hinge upon alleged violations of the FDCA and its regulations."); *Klussman v. Cross-Country Bank*, No. C-01-4228-SC, 2002 WL 1000184, at *2-6 (N.D. Cal. May 15, 2002) (removal improper where plaintiff's UCL claim was based on violation of FCRA).

disputed federal question. *See Arco Environmental Remediation, L.L.C. v. Dep't of Health & Environmental Quality of the State of* Montana, 213, F.3d 1108, 1114 (9ᵗʰ Cir. 2000); *see, e.g. Briggs*, 2010 U.S. Dist. LEXIS 35639, at *5-6. Like *Briggs*, "it is undisputed that, in this case, the face of plaintiffs' complaint does not allege a claim arising exclusively under federal law." *Briggs*, 2010 U.S. Dist. LEXIS 35639, at *5. However, the "artful pleading doctrine allows courts to delve beyond the face of the state court complaint and find federal question jurisdiction by recharacterizing a plaintiff's state-law claim as a federal claim." *Lippitt*, 340, F.3d at 1041.

Regarding preemption, "the mere presence of a federal issue does not automatically confer federal-question jurisdiction, and passing references to federal statutes do not create a substantial federal question." *Lippitt*, 340 F.3d at 1040-41. Further, simply because the goals of state laws and federal laws are aligned to prohibit similar unlawful conduct "is not enough to sweep [plaintiff's] complaint within the exclusive jurisdictional ambit" of a federal law. *Lippitt*, 340 F.3d at 1044. Here, Plaintiff has alleged a long history of unfair, deceptive, fraudulent, tortious and anti-competitive conduct. States and common law courts have broad authority to prohibit this conduct. The notion that California and other state laws prohibiting the alleged conduct are somehow *all* reduced in Plaintiff's Complaint to federal antitrust violations would fail to respect the broad scope of state and common law authority prohibiting unfair, deceptive, fraudulent, tortious and anti-competitive conduct entirely independent of federal laws, including the Sherman Act.

In this regard, Plaintiff is in a similar position as the appellant in *Redwood Theatres, Inc. v. Festival Enterprises, Inc.*, 908 F.2d 477 (9ᵗʰ Cir. 1990). In *Redwood*, the Ninth Circuit rejected appellee's argument that "where an industry is primarily engaged in interstate commerce and would benefit from a national uniformity of antitrust law, then restraints upon that interstate trade fall within the exclusive jurisdiction of the Sherman Act and federal courts." *Redwood*, 908 F.2d, at 479-480. Rather, "The Supreme Court…has consistently held that 'Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies," *California v. ARC Am. Corp.*, 490 U.S. 93, 102 (1989) [citations omitted]; *Watson*

*v. Buck*, 313 U.S. 387, 403 (1941), and this court has observed that 'state antitrust laws retain vitality in dealing with matters which significantly affect local interests, even if they also have interstate aspects.'" *Redwood*, 908 F.2d, at 479-480 (quoting *Salveson v. Western States Bankcard Asso.*, 731 F.2d 1423, 1427 (9th Cir. 1984). Further, "California courts have held that the Cartwright Act applies to transactions in interstate commerce." *Id.*

The parallels to *Hendricks* should also be noted. In *Hendricks*, the Court determined that "'to remove a state law claim to federal court under the complete preemption doctrine, federal law must both completely preempt the state law claim and supplant it with a federal claim.'" *Hendricks*, 160 F. Supp. 2d, at 1159 (quoting *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). Further, "the fact that the Federal Power Act includes an exclusive jurisdiction provision does not mean that the entire field is preempted; instead, the exclusive jurisdiction provision only means that federal preemption is a defense to any Federal Power Act claims brought in state court." *Hendricks*, 160 F. Supp. 2d, at 1159. The situation is no different here as both state and federal governments have broad authority to address unfair, deceptive, fraudulent and anti-competitive conduct. As with the Federal Power Act, federal antitrust law by no means preempts entirely state law claims as a general matter and certainly does not supplant such claims with a federal claim in this instance.

To do so here would be to reduce the broad authority states have to regulate anti-competitive conduct independent of federal law to the arguably narrower proscriptions of federal antitrust law. Further, this would necessarily result in equating the elements of proscribed conduct under state law with those of federal law. As Courts have made clear, "the exercise of federal jurisdiction must not 'disturb any congressionally approved balance of federal and state judicial responsibilities.'" *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. Nev. 2012) (quoting *Grable*, 545 U.S. at 313). Permitting removal to federal court for any state law claim involving anti-competitive, fraudulent or deceptive conduct would "herald a potentially enormous shift of traditionally state cases into federal courts." *Nevada*, 672 F.3d, at 676 (quoting *Grable*, 545 U.S., at 319). Finally, it is not even clear which federal statutes would preempt all of Plaintiff's state and common law claims, as Plaintiff at no time

has asserted its intention to pursue any federal causes of action directly or rely upon any federal law violations under the "unlawful" prong of the UCL. Based on Facebook's continued pattern of obstruction and delay, Plaintiff has not even been afforded the opportunity yet to discover the key evidence necessary to determine once and for all the various violations it intends to pursue in summary judgment and the various defendants it will name. Even so, it is clear that none of these causes of action necessarily hinges on a federal question, let alone on a specific federal statute to which any state law claims would ultimately reduce.

There can be no doubt that Plaintiff's claim is not necessarily federal in character and that none of Plaintiff's prayers for relief hinge on the determination of a federal question. Because Plaintiff's claim is *not* "predicated on a violation of federal antitrust laws," unlike *National Credit*, the artful pleading doctrine is inapposite. *National Credit*, 2004 U.S. Dist. LEXIS 17303, at *6. The artful pleading doctrine is intended to prohibit circumstances in which a plaintiff deliberately omits allegations of federal law in pleadings where the federal law is essential to establishing its claim. *See Lippitt*, 340 F.3d, at 1041; *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1389 (9th Cir. 1989). It serves to discourage disingenuous conduct of plaintiffs who attempt to hide behind the well-pleaded complaint rule. *See Hansen*, 891 F.2d, at 1389. However, the Ninth Circuit cautions courts to rely upon the artful pleading doctrine "only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *See Sullivan v. First Affiliated Secur., Inc.* 813 F.2d 1368, 1376 (9th Cir. 1987).

Here, Defendant must show that a violation of federal law is a necessary precursor to Plaintiff prevailing on any of its causes of action in order to invoke the artful pleading doctrine. *See Boxer v. Accuray Inc.*, 906 F.Supp.2d 1012, 1016 (N.D. Cal. 2012) (remanding to Superior Court because defendant made "no showing that a violation of the Dodd-Frank Act with respect to disclosures in a proxy statement is a necessary prerequisite to finding of materiality"). Facebook cannot meet this burden as the only information upon which it relies is Plaintiff's non-voluntary answer to an interrogatory served by Facebook asking Plaintiff to identify all potential laws Facebook's conduct may have violated, independent of whether

Plaintiff intends to pursue such laws at trial. Finally, the fact that this matter may be construed by Facebook to entail novel issues arising under federal law does not by itself justify removal to federal court. *See Nevada*, 672 F.3d, 674-675 (9th Cir. 2012) (finding that the question of whether a particular claim arises under federal law does not depend on the novelty of the federal issue).

### D. Because Removal is Disfavored, Any Ambiguity Is Resolved Against Removal

Federal removal statutes are strictly construed against the exercise of removal jurisdiction. *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (citing *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, at 32 (2002)); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, at 838 (9th Cir. 2004); *Golden 1 Credit Union v. H & B Group, Inc.*, No. 1:06-cv-1717, 2007 U.S. Dist. LEXIS 31142, at *7 (E.D. Cal. Apr. 27, 2007) ("The removal statute must be strictly construed, with all doubts and ambiguities resolved against removal and in favor of remand.") (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, at 108 (1941)). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gasu v. Miles, Inc.*, 980 F.2d 564, at 566 (9th Cir. 1992) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, at 288-90 (1938)).

Defendant cannot meet its burden of establishing that removal is proper. To the extent there is any ambiguity, it should be resolved against removal. These well-established principles further require remanding this matter to the Superior Court.

## III. PLAINTIFF HAS NOT TRIGGERED 28 U.S.C. § 1446(b)(3)

Plaintiff's non-voluntary, truthful response to an interrogatory seeking all potential laws Facebook's conduct may have violated is not sufficient to trigger a window for filing a removal petition almost 22 months since Plaintiff filed suit. On the one hand, if Plaintiff's interrogatory response indeed represents the new information upon which Defendant is relying to start the

clock for its removal petition under 28 U.S.C. § 1446(b)(3), then the interrogatory response on its face demonstrates that Facebook cannot show that Plaintiff's causes of action necessarily reduce to a violation of any underlying federal law, since Plaintiff specifically mentions numerous California and other state laws accessible to Plaintiff under the "unlawful" prong of the UCL, including multiple violations of the Cartwright Act, Cal. Bus. & Prof. Code § 16720. However, on the other hand, if Facebook were to rely on any information outside Plaintiff's interrogatory response, then none of that information could be construed as new information as a result of a voluntary act on Plaintiff's part, as Plaintiff has consistently described Facebook's "bait and switch" conduct and collusion with other companies in pay-to-play and similar schemes since its very first pleading in April 2015.

Facebook either properly served its removal petition under § 1446(b)(3) in relying on Plaintiff's interrogatory response, in which case the response demonstrates on its face that Facebook cannot meet its burden under artful pleading to show that a substantial federal question is necessitated under any prong of any cause of action; or, Facebook is relying on information that Plaintiff has consistently communicated to Facebook for over two years now, in which case Facebook has improperly served its removal petition in violation of the requirements of § 1446(b)(3). One of those two scenarios must be the case.

Further, Plaintiff appreciates that § 1446(b)(3) applies to any "other paper from which it may first be ascertained the case is one which is or has become removable," and therefore that any motion papers submitted by Plaintiff could constitute a voluntary act sufficient to trigger § 1446(b)(3). *Self v. Gen. Motors Corp.*, 588 F.2d 655, 657-659 (9th Cir. 1978). However, in the instant case, it appears that Defendant has deliberately attempted to bait Plaintiff into triggering the § 1446(b)(3) clock through a mandatory, verified response to its served interrogatory that does not even ask which laws upon which Plaintiff intends to rely, but instead requires Plaintiff to answer truthfully under threat of sanction all potential violations that Facebook's conduct may have violated. "The voluntary/involuntary rule provides that, if a suit could not be filed in federal court at the time of its filing, then it must remain in state court unless a 'voluntary' act of the plaintiff brings about a change that renders the case removable". *See Graybill-Bundgard*

*v. Standard Ins. Co.*, 793 F. Supp. 2d 1117, 1119-20 (N.D. Cal. 2011) (quotations omitted). Responding truthfully and completely to an interrogatory intended to bait Plaintiff does not constitute a "voluntary" act. Further, Plaintiff's response to the interrogatory did not provide Facebook with any new information that has not been available to it since April 2015. *See, e.g., Busch v. Jakov Dulcich & Sons, LLC*, 2015 U.S. Dist. LEXIS 79325, at *10-13 (N.D. Cal. June 17, 2015) (finding no "voluntary" act where defendant's conduct was disingenuous in attempting to ascribe a voluntary act to Plaintiff).

## IV.   **PLAINTIFF IS ENTITLED TO RECOVER ITS COSTS AND ATTORNEYS' FEES**

Where a case is improperly removed, the Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). This Court has "wide discretion" under § 1447(c). *See Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 447 (9th Cir.1992). However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Plaintiff's allegations have been known to defendant since April 2015 when Plaintiff first filed suit. Since April 2015, Defendant has taken every possible measure to obstruct and delay these proceedings in bad faith such that at this time Plaintiff still has not obtained discovery relevant to the crucial decision made by Facebook executives, including Chief Executive Zuckerberg, to close Facebook's operating system (which shut down Plaintiff's business along with many other small businesses). On the eve of its deadline to serve its motions for summary judgment, Facebook filed this petition for removal knowing full well that none of Plaintiff's causes of action requires the Superior Court to find a violation of an underlying federal law. Rather, Facebook attempted to bait Plaintiff into the purportedly "voluntary" act it now uses as the basis for its removal petition in a transparent attempt to further obstruct and delay these proceedings.

1    Facebook further claims that Plaintiff's failure to respond to a self-serving email sent by

2    Facebook's counsel somehow definitively establishes that Plaintiff intended to rely upon

3    federal questions in its cause of action under the UCL. See Godkin Decl., Exhibit 6. In fact, as

4    *National Credit* affirms, even if the Court were to consider Plaintiff's answer to Facebook's

5    interrogatory to constitute new information and to potentially raise federal questions, the

6    answer to the interrogatory on its face shows clearly that there is no necessity to reach a federal

7    question under the "unlawful" prong of the UCL.

8    Facebook filed its removal petition with full knowledge of these facts and elected to

9    proceed even after Plaintiff again clarified all this to Facebook. Facebook's removal petition is

10   a transparent attempt to delay the Superior Court trial, and to avoid producing communications

11   among Facebook's executive team clearly relevant to Plaintiff's causes of action. Given that

12   Plaintiff is a small business with limited funds that was shut down by Facebook's conduct,

13   Facebook's gamesmanship in submitting this removal petition at this juncture has jeopardized

14   Plaintiff's ability to obtain judgment at trial scheduled for May 15, 2017.

15   For the foregoing reasons, Facebook did not have an objectively reasonable basis for

16   removing the case when it did, and Plaintiff consequently should be reimbursed its costs and

17   attorneys' fees in preparing and defending this motion.

18   **IV.    CONCLUSION**

19   For all of the foregoing reasons, 643 respectfully requests that the Court remand this

20   matter back to the Superior Court. Additionally, 643 respectfully requests an award of its costs

21   and fees in accordance with 28 U.S.C. § 1447(c).

22   Dated: January 27, 2017                    CRITERION LAW

23                                              BIRNBAUM & GODKIN, LLP

24

25                                              By:   */s/ David S. Godkin*
                                                     Basil P. Fthenakis, Esq.
26                                                   David S. Godkin (*pro hac vice*)
                                                     James E. Kruzer (*pro hac vice*)
27                                                   Attorneys for Plaintiff
                                                     Six4Three, LLC

28

1

## **CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies, under penalty of perjury under the laws of the State of

3

California, that I electronically filed the foregoing document with the Clerk of the Court using

4

the CM/ECF system which will send notification of such filing to the following:

5

6
Sonal N. Mehta
Laura E. Miller

7
Catherine Y. Kim
Durie Tangri LLP

8
217 Leidesdorff Street
San Francisco, CA 94111

9

DATED: January 27, 2017

10

11
By:     */s/ David S. Godkin*_____
                David S. Godkin

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28