DURIE TANGRI LLP
SONAL N. MEHTA (SBN 222086)
smehta@durietangri.com
LAURA E. MILLER (SBN 271713)
lmiller@durietangri.com
CATHERINE Y. KIM (SBN 308442)
ckim@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

Attorneys for Defendant
Facebook, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SIX4THREE, LLC, | Case No. 3:17-cv-00359-WHA |
| Plaintiff, | **DEFENDANT FACEBOOK, INC.'S OPPOSITION TO PLAINTIFF SIX4THREE, LLC'S MOTION TO REMAND** |
| v. | |
| FACEBOOK, INC., | Date:    February 16, 2017 |
| Defendant. | Time:    8:00 a.m. |
| | Ctrm:    8, 19th Floor |
| | Judge:  Honorable William Alsup |

# TABLE OF CONTENTS

                                                                                    Page

I.    INTRODUCTION ...........................................................................................1

II.   FACTUAL BACKGROUND ............................................................................2

      A.    Facebook Changed Its Policies Regarding Third-Party Developer Access to
            Facebook's Users' Data Based on User Feedback, and Only One Developer
            Sued—Six4Three. ....................................................................................2

      B.    Six4Three's Section 17200 Allegations Focus on an Alleged Monopoly. ..........3

      C.    In Discovery, Six4Three Disclosed That It Intends to Rely on the Sherman Act. ..........5

III.  LEGAL STANDARD .......................................................................................8

IV.   ARGUMENT ...................................................................................................9

      A.    Removal Is Appropriate Because Six4Three's Section 17200 "Unlawful" Claim
            Presents a Necessary, Substantial, and Disputed Federal Question.....................9

            1.    Six4Three's Reliance on the "Unlawful" Prong of Section 17200 Requires
                  Reaching a Federal Question. ..................................................................9

            2.    Six4Three's Belated Efforts to Rely on State Law to Avoid Removal
                  Should Be Rejected...............................................................................13

      B.    Facebook Disputes That It Violated Section 2 of the Sherman Act. .................20

      C.    The Alleged Violation of Section 2 of the Sherman Act Is Substantial. ...........20

      D.    Whether Facebook's Conduct Violated Section 2 of the Sherman Act Is Capable of
            Resolution in Federal Court Without Disrupting the Federal-State Balance
            Approved by Congress.............................................................................20

      E.    Six4Three's Remaining Arguments Are Irrelevant or Baseless. .....................21

            1.    Neither the Artful Pleading Doctrine Nor Preemption Are Implicated
                  Here—Six4Three Expressly Invoked Section 2 of the Sherman Act in
                  Verified Interrogatory Responses. .........................................................21

            2.    Facebook's Removal Petition Was Timely, and the Basis for That Removal
                  Need Not Be Restricted to Six4Three's January 12, 2017 Discovery
                  Responses............................................................................................21

      F.    Facebook's Basis for Removal Is Objectively Reasonable. ...........................22

V.    CONCLUSION................................................................................................23

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO PLAINTIFF SIX4THREE, LLC'S MOTION TO
REMAND / CASE NO. 3:17-CV-00359-WHA

**Cases**

*Bosky v. Kroger Texas, LP*,
   288 F.3d 208 (5th Cir. 2002) ....................................................................................................22

*Briggs v. First Nat'l Lending Servs.*,
   No. C 10-00267 RS, 2010 WL 962955 (N.D. Cal. Mar. 16, 2010) ...........................................12

*Cal. ex rel Lockyer v. Dynegy, Inc.*,
   375 F.3d 831 (9th Cir. 2004) ......................................................................................................8

*Cal. ex rel. Herrera v. Guajardo*,
   No. C 10-05658 WHA, 2011 WL 62432 (N.D. Cal. Jan. 7, 2011) ...........................................12

*Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*,
   445 U.S. 97 (1980) ....................................................................................................................20

*California v. Pinnacle Sec. CA. LP*,
   746 F. Supp. 2d 1129 (N.D. Cal. 2010) ...................................................................................12

*Castro v. Providian Nat'l Bank*,
   No. C-00-4256 VRW, 2000 WL 1929366 (N.D. Cal. Dec. 29, 2000) .......................................13

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ................................................................................................................5

*Corwin v. Los Angeles Newspaper Serv. Bureau, Inc.*,
   4 Cal. 3d 842, 856 (1971) .........................................................................................................15

*Costco Wholesale Corp. v. Maleng*,
   522 F.3d 874 (9th Cir. 2008) ....................................................................................................20

*Davis v. Weger Mortg. Corp.*,
   No. CV 10-4379 AHM (SHx), 2010 WL 2594278 (C.D. Cal. Jun. 22, 2010) ...........................13

*Dimidowich v. Bell & Howell*,
   803 F.2d 1473 (9th Cir. 1986) ......................................................................................10, 11, 15

*Gen. Inv. Co. v. Lake Shore & M. S. Ry. Co.*,
   260 U.S. 261 (1922).....................................................................................................................10

*Goddard v. Dep't of Fish & Wildlife*,
   243 Cal. App. 4th 350 (2015) ....................................................................................................17

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)..........................................................................................................8, 9, 20

*Gunn v. Minton*,
   133 S. Ct. 1059 (2013)...........................................................................................................9, 20

*Hendricks v. Dynegy Power Mktg., Inc.*,
   160 F. Supp. 2d 1155 (S.D. Cal. 2001)..............................................................................11, 12

*Holliman v. Kaiser Found. Health Plan*,
No. C-06-0755 SC, 2006 WL 662430 (N.D. Cal. Mar. 14, 2006)......................................................12

*Hutton v. Fid. Nat'l Title Co.*,
213 Cal. App. 4th 486 (2013) ...........................................................................................................17

*In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*,
No. ML 15-02668-BRO (JEMx), 2016 WL 1192642 (C.D. Cal. Mar. 28, 2016) ..........................11, 20

*Khoury v. Maly's of California, Inc.*,
14 Cal. App. 4th 612 (1993) .............................................................................................................16

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ...................................................................................................................17

*Lazar v. Hertz Corp.*,
143 Cal. App. 3d 128 (1983) ............................................................................................................18

*Lew v. U.S. Bank Nat'l Ass'n*,
No. C 11-04546 RS, 2011 WL 5368847 (N.D. Cal. Nov. 7, 2011).....................................................9

*Lippitt v. Raymond James Fin. Servs., Inc.*,
340 F.3d 1033 (9th Cir. 2003) ....................................................................................................11, 12

*Marrese v. Am. Acad. Of Orthopaedic Surgeons*,
470 U.S. 373 (1985).........................................................................................................................10

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005).........................................................................................................................22

*Mattel, Inc. v. Bryant*,
441 F. Supp. 2d 1081 (C.D. Cal. 2005) .............................................................................................22

*Miller v. Hedlund*,
813 F.2d 1344 (9th Cir. 1987) ..........................................................................................................20

*Nat'l Credit Reporting Ass'n v. Experian Info. Sols. Inc.*,
No. C04-01661 WHA, 2004 WL 1888769 (N.D. Cal. July 21, 2004) ....................................... passim

*Roskind v. Morgan Stanley Dean Witter & Co.*,
165 F. Supp. 2d 1059 (N.D. Cal. 2001) ............................................................................................13

*Sambreel Holdings LLC v. Facebook, Inc.*,
906 F. Supp. 2d 1070 (S.D. Cal. 2012) .............................................................................................20

*Turf Paradise, Inc. v. Arizona Downs*,
670 F.2d 813 (9th Cir. 1982) ............................................................................................................10

*Van Slyke v. Capital One Bank*,
No. C 07-00671 WHA, 2007 WL 3343943 (N.D. Cal. Nov. 7, 2007) ...............................................19

**Statutes**

15 U.S.C. § 4.....................................................................................................................................20

28 U.S.C. § 1367.................................................................................................................................9

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO PLAINTIFF SIX4THREE, LLC'S MOTION TO
REMAND / CASE NO. 3:17-CV-00359-WHA

28 U.S.C. § 1441 ................................................................................................................8

28 U.S.C. § 1446 ..................................................................................................8, 21, 22

Cal. Bus. & Prof. Code § 16600 .....................................................................................19

Cal. Bus. & Prof. Code § 17200 ................................................................................ passim

Cal. Bus. & Prof. Code § 17500 ...............................................................................16, 17

Cal. Civ. Code § 1761 ......................................................................................................18

Cal. Civ. Code § 1770 ......................................................................................................18

Cal. Code. Civ. Proc. § 2030.010 ................................................................................7, 22

**Other Authorities**

*Contention*, Black's Law Dictionary (10th ed. 2014) ......................................................7

# I.    INTRODUCTION

This is a federal case.  It belongs in federal court.

Plaintiff Six4Three, LLC's ("Six4Three") operative complaint makes a claim under California Business and Professional Code Section 17200.  Six4Three generally alleged monopolistic conduct without identifying any specific state or federal law that had been violated by Facebook, Inc. ("Facebook") as a predicate for the Section 17200 claim.  To the contrary, in its pleadings and for much of the case, Six4Three made vague, generalized allegations that Facebook unlawfully monopolized its users' data for itself.  As Six4Three did not come out and say that it was relying on federal law, the case proceeded apace in state court.  Less than a month ago, however, Six4Three finally disclosed in a verified contention interrogatory response that it was affirmatively relying on an alleged violation of Section 2 of the Sherman Act as the predicate violation of law for its Section 17200 claim.  Importantly, its contention interrogatory response makes clear that this is not an alternative theory or among a list of predicate violations of law set forth in the disjunctive; rather, it is an unlawful act that Six4Three will rely upon in proving its Section 17200 claim.  And despite multiple opportunities to abandon its federal law claims since serving that contention interrogatory response (both before and after Facebook removed the case), Six4Three has not, and apparently will not, disavow its federal claims.

In short, Six4Three has, quite literally, made a federal case out of its claims.  Yet in requesting remand, Six4Three seeks to erase these facts—which should be dispositive of the remand analysis—and to attack Facebook's motivations.  Both approaches should be rejected.

First, it is simply not accurate, as Six4Three implies, that Six4Three's case is not seeking resolution of a federal claim.  Reading Six4Three's motion, one would come away with the impression that Six4Three's Section 17200 claim is based on a valid claim under the Cartwright Act for conspiracy to restrain trade.  Not so.  Six4Three did not plead a Cartwright Act theory, nor has it alleged facts that would support such a theory, either in the operative complaint or in its sworn contention interrogatory responses.  Six4Three cannot and should not be heard to advance a claim based on alleged monopolistic conduct under the Sherman Act, and then seek to continue to litigate that claim in state court by throwing in an illusory state law claim to avoid removal.  The bottom line is that unilateral monopoly is the focus

of the operative complaint and Six4Three has unequivocally stated that its Section 17200 theory turns on allegations that Facebook violated federal antitrust law.

Second, Six4Three's litany of unfounded accusations regarding Facebook's motivations should be rejected for what they are: a distraction from the merits. Facebook had been litigating the case actively in state court—and indeed had been diligently conducting discovery and working toward the summary judgment deadline—when Six4Three served its contention interrogatory responses disclosing that it was intending to litigate federal antitrust claims in the state court. After Six4Three made clear that it was sticking with that approach and would not be withdrawing its federal claims, Facebook removed the case to this Court. That removal was not an attempt to delay summary judgment or anything else in the state court case. To the contrary, Facebook was and is prepared to move forward with summary judgment expeditiously in the federal court and is looking forward to presenting the Court with a motion outlining why Six4Three's claims fail as a matter of law. Six4Three cannot credibly blame Facebook for the timing of removal when it was Six4Three that disclosed, just a couple weeks before the summary judgment deadline, that it intended to have a substantial federal question resolved by the state court in the guise of a Section 17200 claim.

For the reasons below, Six4Three's motion for remand should be denied.

## II.    FACTUAL BACKGROUND

### A.    Facebook Changed Its Policies Regarding Third-Party Developer Access to Facebook's Users' Data Based on User Feedback, and Only One Developer Sued—Six4Three.

Facebook is an online social media company. ECF No. 13-1 at 4 ¶¶ 7, 9 (Ex. 1). The Facebook Platform allows third-party developers to build applications that interact with Facebook. Facebook first launched the Platform in 2007; in 2010, it launched its Graph API, which allowed third-party developers to read and write data from Facebook about its users. *Id.* at 17 ¶ 40. Third-party developers could access both Facebook users' data, such as the photos they shared on Facebook, and Facebook users' friends' data, such as the photos those individuals shared on Facebook. *Id.* at 17 ¶ 42.

Six4Three is a third-party app developer that built a decidedly unsuccessful iOS application: Pikinis. Pikinis allowed its users to electronically search through all of their Facebook friends' photos to identify photos of women in bikinis and tag them for later viewing. Pikinis used Facebook's Graph API

to access Facebook users' friends' photos. *Id.* at 21-22 ¶¶ 60–62. Fewer than 4,500 people ever downloaded the Pikinis app, and Six4Three has been unable to produce any evidence demonstrating its sales of the Pikinis app (as opposed to free downloads), despite being ordered to do so by the San Mateo Superior Court. *See* Declaration of Sonal N. Mehta in Support of Defendant Facebook, Inc.'s Opposition to Plaintiff Six4Three, LLC's Motion to Remand ("Mehta Decl."), Ex. 1 at 53–56.

Graph API drew criticism. Facebook received extensive user feedback that users wanted more control over sharing their personal information with third-party developers and their apps. Users also told Facebook that they were often surprised when a friend shared their information with an app, that some apps asked for too many permissions, and that they wanted the option of logging into apps without sharing their Facebook information at all.

Based on this feedback, Facebook announced on April 30, 2014 that it would update Graph API on April 30, 2015 (i.e., in one year) to end third-party developer access to several types of Facebook users' data, including Facebook users' friends' photos (also known as the "Friends' Photos Endpoint"). *See* ECF No. 13-1 at 25–26 ¶¶ 73–75 (Ex. 1). In April 2015, Facebook followed through—it ended third-party developer access to Facebook users' friends' photos as planned. Pikinis ceased to function. *See id.* at 29 ¶¶ 95–96.

The change in Facebook's user data policy affected tens of thousands of apps that previously had access to a user's friends' data, *see, e.g.*, ECF No. 12 ("Mot.") at 1–2, but Six4Three is the only developer that sued Facebook in response. Six4Three even launched a website to attract other developers to its cause, but no others have filed suit. *See* Mehta Decl. Ex. 2 at 1.

**B.  Six4Three's Section 17200 Allegations Focus on an Alleged Monopoly.**

Six4Three filed suit in San Mateo Superior Court alleging claims for unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*, negligent misrepresentation, intentional interference with contract, and intentional interference with prospective business relations. ECF 13-1 at 31–36 ¶¶ 110–126, 134–162 (Ex. 1). Six4Three also brought a claim for promissory estoppel. *Id.* at 32–33 ¶¶ 127–133. Six4Three devotes the first two pages of its Motion to Remand to Facebook's alleged promises, but fails to mention that the San Mateo Superior Court sustained Facebook's demurrer as to the promissory estoppel claim, finding:

> The SAC fails to sufficiently allege a clear, unambiguous promise by Facebook or the Plaintiff's reasonable reliance on such a promise. The SAC is based on the allegations at ¶ 52 that Facebook had a long-term commitment to the Facebook platform and to a level playing field for developers. Plaintiff has not alleged a clear and unambiguous promise to keep open the Friends' Photos Endpoint. As to reliance, Plaintiff identifies only conclusory, generalized statements and alleged omissions regarding Facebook's platform and API at the time they were launched in 2007 and 2010. SAC ¶ 10–23. This was well before Plaintiff became a registered developer with Facebook in December 2012. Nothing in the statements referred to the friends' photo endpoint and nothing indicated that Facebook would make available all endpoints to developers forever. This does not sufficiently allege reasonable reliance.

ECF No. 13-1 at 41–42 (Ex. 2).

With respect to unfair competition, the factual allegations in Six4Three's Second Amended Complaint, as well as in its verified contention interrogatory responses, are directed to its theory that Facebook, from 2007 to 2015, engaged in a "practice/scheme to lure in developers, generate additional advertising revenue by enhancing the user's experience and then *monopolize for itself* the market for image search capabilities" on the Facebook Platform. *Id.* at 41 (emphasis added). Below are just a few examples of the relevant allegations in the Second Amended Complaint:

Six4Three alleges that Facebook's conduct was:

> designed to, and did, entice 643 and other Developers to create applications for Facebook with promises of, among other things, a level playing field, fair competition, and a chance to build a business. . . . Facebook promised Developers that their own advanced photo-sharing applications would be treated on a level playing field with any photo-searching applications *Facebook* decided to launch in the future.

ECF No. 13-1 at 31 ¶ 111 (Ex. 1) (emphasis added).

Six4Three alleges that Facebook caused harm to the developer community when it terminated the "Developers' ability to build advanced photo-searching applications, *while retaining its own ability to create these kinds of applications*. . ." *Id.* at 31 ¶ 112 (emphasis added).

And Six4Three alleges that "by ending Developer access to the Friends' Photos Endpoint, Facebook has *monopolized for itself* the ability to create applications capable of searching or sorting photos, which harms consumers, Developers, and competitors." *Id.* at 32 ¶ 116 (emphasis added); *see also id.* at 30 ¶ 106 ("[Facebook] took these actions for the purpose of improperly *monopolizing for itself* the ability to access the data previously accessible through the Friends' Photos Endpoint and other

terminated endpoints, and to create applications based on those data.") (emphasis added); *id.* at 30 ¶ 107 ("In sum, Facebook acts as a platform when it wants to exploit Developer creativity and resources, and *a monopolist* when it wants to secure areas of the ecosystem *for itself* once developer creativity and resources have been invested.") (emphasis added).

### C. In Discovery, Six4Three Disclosed That It Intends to Rely on the Sherman Act.

While Six4Three suggests that Facebook somehow shied away from litigating this case in state court, Facebook filed demurrers to Six4Three's original Complaint, First Amended Complaint, and Second Amended Complaint; engaged in written discovery and document production, including producing more than 800,000 pages of documents; took the depositions of two Six4Three witnesses; and was prepared to move for summary judgment. Mehta Decl. ¶ 5.

In discovery, Facebook asked Six4Three to describe "THE COMPLETE FACTUAL BASIS that you contend supports YOUR claim for violation of Business and Professions Code § 17200 et seq." Six4Three again provided the same unilateral monopolization allegations in response. Mehta Decl., Ex. 1 at 18–23. Six4Three also claimed that Facebook's conduct "is reflective of a pattern of behavior on Facebook's part over many years in which it induces investment around certain applications with promises of serving as a neutral platform provider, and then once certain applications become big enough markets, it shuts off that platform and *monopolizes the market for itself*." *Id.* at 19–20 (emphasis added). Importantly, Six4Three did not identify any specific state or federal law that it contended was violated as the predicate unlawful act for its Section 17200 claim. *Id.*[1]

Because Facebook still sought to understand specifically what underlying state or federal laws Six4Three was intending to litigate as the predicate unlawful acts for its Section 17200 claim,[2] Facebook also propounded another special interrogatory specifically seeking the basis for Six4Three's Section

---

[1]    Oddly, it included a quote from the ranking member of the Antitrust Subcommittee of the United States House Judiciary Committee regarding the Federal Trade Commission's jurisdiction over anticompetitive conduct. *Id.*

[2]    "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted).

17200 "unlawful" claim: "State ALL laws that YOU contend Facebook's conduct violates RELATED TO YOUR claim for violation of Business and Professions Code § 17200 et seq." *See* ECF No. 13-1 at 50 (Ex. 3). On January 12, 2017, just a couple of weeks before Facebook was due to file its summary judgment motion, Six4Three responded to Facebook's interrogatory:

> . . . . Facebook's conduct repeatedly violates Business and Professions Code § 17200 et seq. by engaging in: (1) unlawful business acts or practices; (2) unfair business acts or practices; (3) fraudulent business acts or practices; (4) unfair, deceptive, untrue or misleading advertising; and (5) business acts or practices prohibited by §§ 17500–17577.5. Further, Facebook's conduct repeatedly violates Business and Professions Code §§ 17500 et seq., which prohibits advertising goods or services that Facebook knew or should have known were likely to deceive. Facebook's conduct also repeatedly violates California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 et seq.) protecting consumers against unfair and deceptive business practices (Cal. Civ. Code § 1760) and various violations of Cal. Civ. Code § 1770. Finally, Facebook's conduct repeatedly violates Business and Professions Code §§ 16600 et seq. prohibiting contracts that restrain engagement in a lawful profession, trade or business of any kind.

> Facebook's conduct also violates ***Section 5 of the Federal Trade Commission Act*** (15 U.S.C. § 45) prohibiting unfair methods of competition in or affecting commerce and unfair or deceptive practices in or affecting commerce. Facebook's conduct further violates ***Section 1 of the Sherman Act*** prohibiting contracts in restraint of trade or commerce. Facebook's conduct further repeatedly violates ***Section 2 of the Sherman Act*** prohibiting the monopolization or attempt to monopolize any part of the trade or commerce among states. Facebook's conduct further repeatedly violates ***Section 2 of the Clayton Act, the Robinson-Patman Price Discrimination Act***, prohibiting discrimination of price between different purchasers where the effect is to lessen competition or tend to create a monopoly. Facebook's conduct further repeatedly violates ***Section 3 of the Clayton Act*** prohibiting agreements that require avoidance of services or goods from competitors that tend to create a monopoly or lessen competition. Facebook's conduct further repeatedly violates the Cartwright Act, Business and Professions Code §§ 16720 et seq., prohibiting trusts or actions in concert in restraint of trade or commerce. Facebook's violations further include numerous per se violations resulting from tying agreements with a host of third parties.

> Finally, Facebook's conduct violates numerous other state laws that are accessible via Business and Professions Code §§ 17200 et seq., including but not limited to New York General Business Law §§ 349 et seq. prohibiting deceptive acts or practices in conduct of any business, trade or commerce or in the furnishing of any service. Facebook's conduct further violates Business and Professions Code § 17200 et seq. by reason of its tortious conduct, including but not limited to constructive fraud, negligent misrepresentation of material fact, intentional interference with contract and intentional interference with prospective business relations.

*Id.* at 50–51 (emphasis added). This was the ***first*** time that Six4Three explicitly stated that its "unlawful" claim rested on several federal antitrust laws, including Section 2 of the Sherman Act, as well as a number of state laws. Six4Three's response identified all these laws in the conjunctive, rather than the disjunctive. *See id.*

Throughout its Motion, Six4Three attempts to rewrite this interrogatory and its own response. Facebook served a straightforward interrogatory asking Six4Three about its contentions[3] regarding the "unlawful" prong of its Section 17200 claim. *See* Cal. Code. Civ. Proc. § 2030.010 ("An interrogatory may relate to whether another party is ***making a certain contention***, or to the facts, witnesses, and writings on which a contention is based. An interrogatory is not objectionable because an answer to it involves an opinion or contention that relates to fact or the application of law to fact, or would be based on information obtained or legal theories developed in anticipation of litigation or in preparation for trial.") (emphasis added). Contrary to Six4Three's arguments before this Court, this interrogatory does not ask for all laws Facebook's conduct "***may*** have violated," all laws that "***could be*** implicated," or all laws that are "***potentially*** accessible via the 'unlawful' prong of the UCL. *See, e.g.*, Mot. at 3–4. Rather, it specified that it sought the laws that Six4Three ***contended*** Facebook's conduct violated in relation to its Section 17200 claim. Six4Three's post hoc qualifications are nowhere to be found in its response to this interrogatory. In no uncertain terms, Six4Three's verified contention interrogatory response states that Facebook's conduct ***violates*** five different federal antitrust provisions, including "repeatedly" violating "Section 2 of the Sherman Act prohibiting the monopolization or attempt to monopolize any part of the trade or commerce among states." ECF No. 13-1 at 51 (Ex. 3). These are not optional or alternative contentions described in the disjunctive—they are the very core of Six4Three's Section 17200 claim.

After receiving and analyzing Six4Three's contention interrogatory response, counsel for Facebook promptly contacted Six4Three to confirm that Six4Three in fact intended to pursue all of the federal and state claims identified in its contention interrogatory response as the basis for its "unlawful"

---

[3] For the avoidance of doubt, Black's Law Dictionary defines a contention as "[a] strong opinion that someone expresses; esp., a legal or factual position stated openly by counsel." *Contention*, <u>Black's Law Dictionary</u> (10th ed. 2014).

claim. Mehta Decl., Ex. 3. Facebook's counsel requested that Six4Three review its responses and identify which of the listed state and federal laws Six4Three intended to pursue. In the event that Six4Three declined to respond, Facebook stated that it would "understand that Six4Three maintains its contentions that Facebook has violated . . . all of the laws identified [] and plans to assert those laws as a basis for its unlawfulness claim in the case going forward, including to oppose summary judgment." *Id.* Six4Three did not respond. Mehta Decl. ¶ 4. Although Six4Three's Motion attempts to sidestep this email as "self-serving," Six4Three continues to decline to disavow reliance on Section 2 of the Sherman Act for its allegations of unlawful monopolistic conduct.

On January 24, 2017, just twelve days after receiving notice that Six4Three was intending to litigate Sherman Act claims in the state court proceeding, Facebook removed this action to federal court because Six4Three's Section 17200 "unlawful" claim "arises under federal antitrust law," and thus "is necessarily federal in character, and presents substantial, disputed questions of federal antitrust law." ECF No. 1 at 3.

## III.    LEGAL STANDARD

A defendant in a state court may remove an action to federal court so long as the action could have originally asserted federal-question jurisdiction. 28 U.S.C. § 1441(a); *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of any amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

While federal-question jurisdiction generally is invoked by a plaintiff pleading a cause of action created by federal law, there is "another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, [the Supreme Court] having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

Federal jurisdiction over a state claim exists if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Grable*, 545 U.S. at 314; *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).[4]

## IV.  ARGUMENT

### A.  Removal Is Appropriate Because Six4Three's Section 17200 "Unlawful" Claim Presents a Necessary, Substantial, and Disputed Federal Question.

#### 1.  Six4Three's Reliance on the "Unlawful" Prong of Section 17200 Requires Reaching a Federal Question.

Resolving Six4Three's Section 17200 claim necessarily raises the issue of whether Facebook's conduct violated Section 2 of the Sherman Act by either creating a monopoly for itself or attempting to do so. Six4Three cannot dispute that it has pled a cause of action predicated on Facebook's alleged unilateral monopolistic actions. Indeed, Six4Three's Motion quotes the California Superior Court's summary of Six4Three's Section 17200 claim: "Plaintiff has specifically alleged that it was a victim to a ***Facebook*** practice/scheme to lure in developers, generate additional advertising revenue by enhancing the user's experience and then ***monopolize for itself*** the market for image search capabilities." Mot. at 2; ECF No. 13-1 at 41 (Ex. 2) (emphasis added). While Six4Three has also identified a laundry list of other state and federal antitrust laws, the ***only*** provision that renders unilateral monopolistic conduct illegal is Section 2 of the Sherman Act. Where, as here, a claim necessarily rests on questions of federal antitrust law, removal to federal court is appropriate.

---

[4]    Removal of the entire case, including Six4Three's common law tort claims, is warranted here. Under 28 U.S.C. § 1367(a), "the district courts ***shall*** have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* (emphasis added). District courts may only decline to exercise supplemental jurisdiction over state law claims that arise from the same case or controversy if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c); *see also Lew v. U.S. Bank Nat'l Ass'n*, No. C 11-04546 RS, 2011 WL 5368847, at *2 (N.D. Cal. Nov. 7, 2011).

a. **This Case Is Indistinguishable From Prior Cases in Which This Court Has Found Removal Appropriate.**

Federal courts have exclusive jurisdiction over federal antitrust claims. *See, e.g.*, *Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813, 821 (9th Cir. 1982); *Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 470 U.S. 373, 379–80 (1985) (citing *Gen. Inv. Co. v. Lake Shore & M. S. Ry. Co.*, 260 U.S. 261, 286–88 (1922)). For this reason, federal courts reviewing remand motions involving allegations of monopolistic conduct have consistently found federal-question jurisdiction.

*Nat'l Credit Reporting Ass'n v. Experian Info. Sols. Inc.*, No. C04-01661 WHA, 2004 WL 1888769 (N.D. Cal. July 21, 2004), is directly on point. There, the plaintiff filed a complaint in state court alleging that each of three defendants had significant monopolistic power and with that power engaged in numerous anticompetitive acts. *Id.* at *1. According to the complaint, these acts violated each of the unfair, unlawful, and deceptive business acts and practices prongs of Section 17200 through the violation of both "state and federal antitrust laws." *Id.* The plaintiff made, and the Court rejected, two of same arguments that Six4Three makes here. *First*, the plaintiff argued that because it had asserted both state and federal antitrust laws, the resolution of its Section 17200 claim did not rely on the Sherman Act. The Court considered and rejected this argument, noting that the factual allegations in the complaint described only unilateral anticompetitive conduct by the three defendants:

> The complaint was void of any allegations of an agreement or a conspiracy to act among defendants. Thus, the gravamen of plaintiff's complaint was that each defendant had unilaterally engaged in anticompetitive conduct to maintain or augment its monopoly. Thus, plaintiff seems to have asserted only claims for monopolization or attempted monopolization under Section 2 of the Sherman Act. Federal courts have exclusive jurisdiction over such claims because California's antitrust laws do not address such unilateral, monopolization conduct.

*Id.* at *3 (citing *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986)). *Second*, the plaintiff in *National Credit* argued that it could prevail on its Section 17200 claim without reference to the "unlawful" prong. The Court rejected that argument as well, noting that the complaint alleged that the defendants had violated each of the Section 17200 prongs in the conjunctive ("unfair, unlawful *and*

deceptive business actions and practices"). *Id.*[5]

Similarly, in *In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, No. ML 15-02668-BRO (JEMx), 2016 WL 1192642 (C.D. Cal. Mar. 28, 2016), the plaintiff asserted a Section 17200 claim alleging that defendants had "abused their monopoly position" to impose "unreasonably high prices." *Id.* at *4. While the plaintiff argued that his allegations of monopoly merely provided support to his primary theory of liability—"unconscionability of the consumer contracts under California state law"—the court reasoned that if the allegations of monopolistic practices were eliminated, there would be no basis for the plaintiff's claim. *Id.* Because monopolistic conduct "is only actionable under Section 2 of the Sherman Act," the court found that there was federal-question jurisdiction. *Id.* at *5 (quoting *Dimidowich*, 803 F.2d at 1478).

Like both *National Credit* and *National Football Leagues*, Six4Three's Second Amended Complaint alleges unilateral monopolistic conduct by Facebook, and is void of any allegations of an agreement or conspiracy. *See infra* § IV(A)(2)(a). The only law identified by Six4Three that prohibits the alleged conduct is Section 2 of the Sherman Act. Thus, following these cases, Six4Three's Section 17200 claim necessarily raises a federal question.

### b. Six4Three's Position Is Belied By Its Own Case Law.

Six4Three leads off its legal analysis by suggesting that *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033 (9th Cir. 2003), and *Hendricks v. Dynegy Power Mktg., Inc.*, 160 F. Supp. 2d 1155 (S.D. Cal. 2001), control here. But those cases are not like this one.

In *Lippitt*, the Ninth Circuit "construed the complaint to allege fraud and deceptive advertising practices rather than ***any*** violation of federal regulation." *Nat'l Credit*, 2004 WL 1888769, at *5 (emphasis added). Indeed, the plaintiff in *Lippitt* **disclaimed** that his complaint sought to enforce any federal statute or regulation, and instead only relied on false advertising as the basis for his Section

---

[5] Similarly, the mere fact that Six4Three has asserted the unfair prong ***and*** the unlawful prong does not destroy federal jurisdiction. Here, like the plaintiff in *National Credit*, Six4Three asserted its unfair and unlawful claims in the conjunctive rather than the disjunctive, and so its allegation of "unlawful business practices" supports removal. *See* ECF No. 13-1 at 31 ¶¶ 121–22 (Ex. 1) ("Facebook's actions thus constituted an unfair business practice . . . Facebook's decision . . . ***was also*** unlawful") (emphasis added).

17200 claim. *Lippitt*, 340 F.3d at 1040. Here, not only has Six4Three not disclaimed a significant federal question, it has expressly alleged a violation of Section 2 of the Sherman Act, as well as violations of several other federal antitrust provisions.

In *Hendricks*, the plaintiff did not explicitly rely on the violation of a federal statute to satisfy the unlawful prong of Section 17200 and never suggested that it would. The court ruled that the fact that it "might" was not sufficient to justify removal. *Hendricks*, 160 F. Supp. 2d at 1163 ("The fact that Plaintiffs **might** attempt to establish liability by challenging the rates as not 'just and reasonable' within § 824d is irrelevant since such proof is not the only way in which Plaintiffs can prevail."). In contrast, Six4Three has expressly invoked Section 2 of the Sherman Act in a verified contention interrogatory response.

Six4Three's reliance on *California v. Pinnacle Sec. CA. LP*, 746 F. Supp. 2d 1129 (N.D. Cal. 2010), is similarly unavailing. As in *Hendricks*, the Plaintiff did not expressly rely on a violation of federal law to establish the unlawful prong of Section 17200, but instead premised the unlawful prong on violations of "a number of state laws." *Id.* at 1131. The court reasoned that just because conduct "might" have violated federal statutes or regulations does not mean that a determination of the state claim necessarily turns on the resolution of federal law. *Id.* And in distinguishing *Pinnacle* from *National Credit*, the court highlighted the fact that the plaintiff in *National Credit* alleged a violation of "state **and** federal antitrust laws" (as Six4Three does here), whereas in *Pinnacle*, only state law violations were alleged. *Id.* at n.3 (emphasis added) (quoting *Nat'l Credit*, 2004 WL 1888769, at *3).

The other cases cited by Six4Three—not one of which involved allegations that the defendant had violated federal antitrust laws—similarly fail. *See Briggs v. First Nat'l Lending Servs.*, No. C 10-00267 RS, 2010 WL 962955 (N.D. Cal. Mar. 16, 2010) (no federal jurisdiction because multiple state law grounds were pled to satisfy unlawful prong); *Cal. ex rel. Herrera v. Guajardo*, No. C 10-05658 WHA, 2011 WL 62432, at *4 (N.D. Cal. Jan. 7, 2011) (no federal jurisdiction because while a federal basis for the unlawful prong was pled, the "gravamen of the complaint" was not based on a violation of federal law, but upon state law); *Holliman v. Kaiser Found. Health Plan*, No. C-06-0755 SC, 2006 WL 662430, at *3 (N.D. Cal. Mar. 14, 2006) (distinguishing cases involving federal antitrust laws, as "the rule that state law claims cannot be alchemized into federal causes of action by incidental reference . . . has no

application when relief is particularly predicated on a subject matter committed exclusively to federal jurisdiction") (citation omitted); *Roskind v. Morgan Stanley Dean Witter & Co.*, 165 F. Supp. 2d 1059, 1067 (N.D. Cal. 2001) (no federal jurisdiction because the only federal issue was merely "a method to assess defendant's misconduct, but establishing a violation is not a necessary element of plaintiff's claims"); *Castro v. Providian Nat'l Bank*, No. C-00-4256 VRW, 2000 WL 1929366, at *3 (N.D. Cal. Dec. 29, 2000) (no federal jurisdiction where plaintiffs had "both pled and intend[ed] to prove that the unlawful prong of section 17200 is supported by violations of state law"); *Davis v. Weger Mortg. Corp.*, No. CV 10-4379 AHM (SHx), 2010 WL 2594278, at *1 (C.D. Cal. Jun. 22, 2010) (no federal jurisdiction because Section 17200 claim could be supported by state law theories and did not depend on a federal issue).

### 2. Six4Three's Belated Efforts to Rely on State Law to Avoid Removal Should Be Rejected.

Perhaps recognizing that removal to federal court is warranted under the above precedents, Six4Three attempts to bolster its remand request by arguing that its case is really about violations of state law and not the Sherman Act. A fair reading of its pleadings and interrogatory responses belie that claim.

#### a. The Cartwright Act Does Not Reach the Conduct Alleged in the Second Amended Complaint.

Six4Three's Second Amended Complaint expressly and exclusively refers to unilateral monopolistic conduct—this is the ***only*** conduct described in the section outlining the Section 17200 cause of action. *See* ECF No. 13-1 at 31–33 ¶¶ 110–126 (Ex. 1). Notably absent from the Second Amended Complaint or Six4Three's discovery responses are any factual allegations related to a theory of conspiracy to divide a market, conspiracy to monopolize, or any tying agreements, which Six4Three alleges in its Motion. *See, e.g.*, Mot. at 6. Yet, to create the appearance of such allegations where none exist, Six4Three mischaracterizes five paragraphs in the Second Amended Complaint in support of its

new-found conspiracy and tying theories.[6]

Six4Three first points to two paragraphs alleging that Facebook worked with dozens of companies prior to the launch of the Facebook Platform to show "how easy it was for all developers to integrate with Facebook Platform." Mot. at 6 (citing ECF No. 13-1 at 6 ¶¶ 18–19 (Ex. 1)). Not only are these paragraphs related to activity in 2007—three years before the launch of Graph API, more than five years before Six4Three even existed, and eight years before Facebook ended developer access to a user's friends' data—they do not contain allegations that "Facebook struck deals with certain large software companies to provide them a competitive advantage not available to small businesses *after* closing off access to its operating system" in April of 2015 as Six4Three implies in its Motion. Mot. at 6 (emphasis added). Six4Three also cites Paragraphs 22 and 23 of the Second Amended Complaint, but by its own admission, these paragraphs do not allege that Facebook entered into any conspiracy to restrict trade, but rather that it promised ***not to***. *Id.*

Ultimately, to support its belated attempt to convert its Sherman Act claims into Cartwright Act claims to avoid removal, Six4Three is left with a single sentence in its 163-paragraph Second Amended Complaint: "The Wall Street Journal also reported in the same article that Facebook reached ***an unspecified compromise*** with dating app Tinder that permitted ***some form of*** access to photos of mutual friends." *Id.* (citing ECF No. 13-1 at 30 ¶ 103 (Ex. 1)) (emphasis added). Even if this allegation were true, it provides no support for Six4Three's last-minute effort to avoid federal jurisdiction by asserting that Facebook conspired with others to restrain trade. Mot. at 6. Nowhere does the Second Amended Complaint allege that Tinder conspired with Facebook to enable Facebook's so-called monopoly of its own user data or the ability to create apps based on that data. In fact, neither the Second Amended Complaint nor Six4Three's interrogatory responses related to its Section 17200 claim contain any other mention of Tinder at all. *See* ECF No. 13-1 at 50–51 (Ex. 3); Mehta Decl., Ex. 1.

---

[6] Unsurprisingly, Six4Three's Motion entirely omits its responses to Facebook's Special Interrogatory No. 9, Mehta Decl., Ex. 1, seeking the complete factual basis for its Section 17200 claim. That response contains no allegations regarding conspiracy or tying agreements.

Finally, Six4Three provides no explanation, let alone factual support, for its conclusory statement that Facebook "engaged in concerted action with certain preferred companies in the form of tying agreements." Mot. at 6. Indeed, this allegation is nonsensical in the context of the Facebook Platform, which Facebook provides for free. A tying agreement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier. . . . They deny competitors free access to the market for the tied product, not because the party imposing the tying requirements has a better product or a lower price but because of his power or leverage in another market. At the same time buyers are forced to forego their free choice between competing products." *Corwin v. Los Angeles Newspaper Serv. Bureau, Inc.*, 4 Cal. 3d 842, 856 (1971). Here, even if there were a product or service on sale, there is no allegation of a second "tied" product or service, let alone buyers to purchase those non-existent tied products or services.

Importantly, just as Six4Three cannot point to any prior factual allegations in support of its new claim that Facebook violated the Cartwright Act, Six4Three also provides the legal theory in support of that claim for the first time in its Motion. Relying on *Dimidowich*, 803 F.2d at 1475, Six4Three attempts to save its monopolization theory by noting that "a claim for conspiracy to monopolize is cognizable under the Cartwright Act because it alleges the requisite combination of actors." Mot. at 6. While this is true, nothing in Six4Three's pleading, discovery responses, or even its Motion includes a theory of "conspiracy to monopolize" in the context of this case. Six4Three argues that Facebook violated the Cartwright Act by refusing to give Six4Three Facebook users' data, while providing that data to other companies. That is not a conspiracy to monopolize. At best, it is a refusal to deal, which is not a cognizable antitrust violation under the Cartwright Act. *Dimidowich*, 803 F.2d at 1478 ("A manufacturer may choose those with whom it wishes to deal and unilaterally may refuse to deal with a distributor or customer for business reasons without running afoul of the antitrust laws.").

Conceding that it does not have a factual basis for a Cartwright Act claim, Six4Three attempts to assure the Court that Six4Three "is confident it will have evidence sufficient to support all of the foregoing elements to prevail under the Cartwright Act." Mot. at 6. But Six4Three admits that it cannot even identify which third parties allegedly colluded with Facebook, as it has "yet to discover the key

evidence necessary to determine once and for all the various violations it intends to pursue in summary judgment *and the various defendants it will name*." *Id.* at 13 (emphasis added). In other words, Six4Three has neither the facts nor even a plausible story to assert a Cartwright Act claim in good faith, let alone prove one. Six4Three's hope, sincere or not, that it will discover facts in support of a Cartwright Act claim does not serve as a basis to deny federal jurisdiction.[7]

 **b.**   **Six4Three's Other California State Claims Are Inapplicable to the Conduct Alleged in the Second Amended Complaint.**

 The other California state antitrust claims listed by Six4Three are also facially inapplicable to the conduct identified in the Second Amended Complaint and Six4Three's verified interrogatory responses. In addition to the Cartwright Act, Six4Three also asserts:

> Facebook's conduct repeatedly violates Business and Professions Code §§ 17500 *et seq.*, which prohibits advertising goods or services that Facebook knew or should have known were likely to deceive. Facebook's conduct also repeatedly violates California's Consumer Legal Remedies Act (Cal Civ. Code §§ 1750 et seq.) protecting consumers against unfair and deceptive business practices (Cal. Civ. Code § 1760) and various violations of Cal. Civ. Code § 1770. Finally, Facebook's conduct repeatedly violates Business and Professions Code §§ 16600 et seq. prohibiting contracts that restrain engagement in a lawful profession, trade or business of any kind.

Mot. at 6–7. Facebook addresses each of these in turn.

 **i.**   **California Business and Professions Code §§ 17500 *et seq.***

 Six4Three's attempt to bring false advertising into this case to avoid removal fails for several reasons.

 As a threshold matter, Section 17500 is a separate prong of a Section 17200 claim and Six4Three did not plead it in its Second Amended Complaint. *See, e.g.*, *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993) (sustaining demurrer where "complaint identifies no particular section of the statutory scheme which was violated and fails to describe with any reasonable particularly the facts

---

[7]   Facebook has already produced over 800,000 pages of documents in this case (collected and produced from numerous custodians with knowledge of the activities underlying Six4Three's claims and based on search terms negotiated between Facebook and Six4Three). That Six4Three still cannot identify any evidence to support this new Cartwright Act theory belies any "confidence" that it is going to find such evidence in the future.

supporting violation"). While Six4Three's Motion states, without citation,[8] that the Second Amended Complaint seeks relief through the Section 17500 prong, *see, e.g.*, Mot. at 8–9, the Court will search in vain for any reference to this provision within the Second Amended Complaint. Instead, Six4Three alleges only that Facebook's actions were (1) "an unfair business practice under California's Unfair Business Practices Act" and that (2) "Facebook's decision to end access to the Friends' Photos Endpoint *was also* unlawful." ECF No. 13-1 at 32 ¶¶ 121–22 (Ex. 1) (emphasis added).[9] Of course, Six4Three cannot shoehorn a brand new theory into its 17200 claim merely because it is trying to escape the federal courts. *See Goddard v. Dep't of Fish & Wildlife*, 243 Cal. App. 4th 350, 363–64 (2015) ("The pleadings in a summary judgment motion delimit the scope of the issues and frame the issues; the burden of a defendant moving for summary judgment only requires negating the plaintiff's theories of liability as *alleged in the complaint*") (emphasis in original); *Hutton v. Fid. Nat'l Title Co.*, 213 Cal. App. 4th 486, 492 (2013) ("The papers filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings.") (internal quotation marks omitted).

In any event, even if Six4Three had pled the false advertising prong in the Second Amended Complaint, it has pled no facts to support such a claim. The ***only*** references to advertising whatsoever in

---

[8]     This is emblematic of Six4Three's repeated inaccurate and unsupported characterizations of its own pleadings. Six4Three's "Background" section purports to describe its allegations, but does not include a single citation to the Second Amended Complaint. For example, Six4Three accuses Facebook of entering into "numerous pay-to-play agreements," and claims (without citation) that Six4Three made these allegations in "its very first pleading in April 2015." Mot. at 2, 15. Not only are these allegations nowhere in any of Six4Three's pleadings, Six4Three has provided no indication of what these "pay-to-play" agreements even are, let alone who's paying and who's playing.

[9]     Also contrary to its statements in its Motion, Six4Three did not allege the fraud prong in its Section 17200 claim. Mot. at 8–9. The only reference to "fraud" in the Second Amended Complaint is the conclusory allegation that Facebook acted "with fraud, malice and oppression, and in reckless disregard of the rights of 643." ECF No. 13-1 at 32 ¶ 123 (Ex. 1). Because this language tracks the standard for punitive damages rather than Section 17200, and is repeated word for word in Six4Three's tort claims, *id.* at 36–37 ¶¶ 143, 152, and 161, the only plausible reading is that it is an improper attempt to obtain punitive damages, which are not available under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). There is no other suggestion, let alone allegation, in the Second Amended Complaint that Six4Three was pleading or pursuing a claim under the fraud prong of Section 17200.

the Second Amended Complaint is related to ***developers*** advertising using the Facebook Platform or Facebook's sale of advertising space to third parties. *See, e.g.*, ECF No. 13-1 at 5, 7, 16, 22 ¶¶ 14, 22, 35, 66 (Ex. 1). There is no allegation that ***Facebook*** advertised or even offered to sell any real property, personal property, or service, and certainly no attempt to satisfy the elements of a Section 17500 claim. *See also*, Mehta Decl., Ex. 1 at 18–22 (making no reference to false advertising in recitation of "complete factual basis" for Section 17200 claim). Indeed, if Six4Three actually believed that it had a viable claim under Section 17500, it would have pled it as a separate cause of action.

### ii. California Consumer Legal Remedies Act ("CLRA") and "Various Violations of Cal. Civ. Code § 1770"

Six4Three's reliance on the CLRA must also be rejected. The Second Amended Complaint neither references the CLRA nor alleges facts that could plausibly support such a claim. More fundamentally, Six4Three cannot claim a violation of the CLRA under the express provisions of the statute. To assert a CLRA claim, the plaintiff must be a "consumer," defined as "an ***individual*** who seeks or acquires, by purchase or lease, any goods or services ***for personal, family, or household purposes***." Cal. Civ. Code § 1761 (emphasis added). Six4Three has no colorable claim that it is either an "individual" (as opposed to a "person") or that it purchased or leased any product or service from Facebook at any time "for personal, family, or household purposes." *See, e.g. Lazar v. Hertz Corp.*, 143 Cal. App. 3d 128, 141–42 (1983) (individual that rented cars for business purposes was not a "consumer"). Moreover, the CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family or household purposes" (Cal. Civ. Code § 1761(a)), and "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods" (Cal. Civ. Code § 1761(b)). The Second Amended Complaint fails to allege that Facebook sold or leased Six4Three any goods or services for the simple reason that Facebook Platform is free and is not a "tangible chattel," and Facebook did not provide "work, labor, and services" to Six4Three. In short, Six4Three has no plausible claim under the CLRA, and cannot be heard to invoke that statute merely to avoid federal jurisdiction.

### iii.     California Business and Professions Code §§ 16600 et seq.

California Business and Professions Code §§ 16600 et seq. generally renders non-compete agreements void in California.  At no point in its pleadings or otherwise has Six4Three identified any agreement between Six4Three and Facebook that could plausibly fall into the subject matter of this provision, nor could it.

### iv.     Six4Three Cannot Borrow the Laws of Other States in Support of Its Section 17200 Claim.

Six4Three asserts—without support—that it can establish the unlawful prong of the UCL by borrowing the laws of other states.  In discovery, Six4Three identified only one state law outside of California:  N.Y. Gen. Bus. Law §§ 349 et seq., which prohibits "deceptive acts or practices in conduct of any business, trade or commerce or in the furnishing of any service."  ECF No. 13-1 at 51 (Ex. 3). Notwithstanding its earlier discovery responses, Six4three has now identified two entirely new state antitrust statutes in its Motion to Remand, one from New York and one from Michigan, and refuses to even commit to this list, leaving open the possibility of adding "antitrust laws accessible via the 'unlawful' prong of the UCL" from "various other states." Mot. at 7.

Even if Six4Three were to be permitted to rely on a shifting list of state laws from "various other states" to support its claims (it cannot), Six4Three's reliance on other states' laws to avoid federal jurisdiction would fail.  Six4Three is just wrong that Section 17200 permits the borrowing of other states' laws.  As this Court recognized, "[n]o decision, however, has been found that allows a plaintiff to import either statutes or precedent from *another state* as an unlawful business practice," and so plaintiffs may not "borrow precedent or statutes from other states" as the basis for a Section 17200 "unlawful" claim." *Van Slyke v. Capital One Bank*, No. C 07-00671 WHA, 2007 WL 3343943, at *14 (N.D. Cal. Nov. 7, 2007) (emphasis original).[10]

\*          \*          \*

---

[10]     In any case, even if Six4Three could borrow the New York statute in support of its Section 17200 claim, it fails for many of the same reasons as the California statutes.  As before, Six4Three does not allege a violation of this statute in the Second Amended Complaint, and makes no attempt to identify the factual allegations that would support such a claim.

Six4Three has pled, and has confirmed it is pursuing, a Section 17200 "unlawful" claim based on a federal claim for alleged unilateral monopolistic conduct under Section 2 of the Sherman Act. The applicable law confirms that those claims belong in federal court. Six4Three's belated, half-baked attempts to rely on a laundry list of other state laws to avoid removal should be rejected. Accordingly, the first *Grable* factor is satisfied: the case necessarily raises a substantial federal question.

**B.     Facebook Disputes That It Violated Section 2 of the Sherman Act.**

The second *Grable* factor, whether the federal question is actually disputed, is easily met. The federal issue—whether Facebook improperly "monopolize[d] for itself the market for image search capabilities"—is actual disputed. *See* Mot. at 2 (citing ECF No. 13-1 at 41 (Ex. 2)). Facebook denies that its actions violated Section 2 of the Sherman Act. "Facebook has a right to control its own product, and to establish the terms with which its users, application developers, and advertisers must comply in order to utilize this product." *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070 (S.D. Cal. 2012). Six4Three does not dispute that this is a contested issue.

**C.     The Alleged Violation of Section 2 of the Sherman Act Is Substantial.**

The third *Grable* factor, the substantiality requirement, "looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066. Again, this factor is easily met. The Supreme Court has expressly highlighted that "[t]he federal interest embodied in the Sherman Act is well-recognized and substantial." *Miller v. Hedlund*, 813 F.2d 1344, 1352 (9th Cir. 1987); *see Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 111 (1980) ("The federal interest in enforcing the national policy in favor of competition is both familiar and substantial. . . . We must acknowledge the importance of the [Sherman] Act's procompetition policy."). The Ninth Circuit has also acknowledged the "federal interest in promoting competition under the Sherman Act." *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 903 (9th Cir. 2008).

**D.     Whether Facebook's Conduct Violated Section 2 of the Sherman Act Is Capable of Resolution in Federal Court Without Disrupting the Federal-State Balance Approved by Congress.**

In this case, there is no concern regarding the appropriate federal-state balance. As discussed above, federal courts have exclusive jurisdiction over federal antitrust claims. 15 U.S.C. § 4; *see, e.g.*, *In re Nat'l Football Leagues*, 2016 WL 1192642; *Nat'l Credit*, 2004 WL 1888769. Here, Six4Three

contends that Facebook violated Section 17200 by engaging in unilateral monopolistic conduct under Section 2 of the Sherman Act. None of Six4Three's identified state law claims speak to these allegations, nor could they. In contrast to Congress, the California state legislature has refrained from passing legislation directed to unilateral monopolistic conduct.

### E. Six4Three's Remaining Arguments Are Irrelevant or Baseless.

#### 1. Neither the Artful Pleading Doctrine Nor Preemption Are Implicated Here— Six4Three Expressly Invoked Section 2 of the Sherman Act in Verified Interrogatory Responses.

Six4Three spends several pages arguing that the standards of the artful pleading doctrine have not been met. Mot. 10–14. Facebook does not dispute that facts supporting removal are not evident on the face of the Second Amended Complaint. That is precisely why Facebook did not remove this action until Six4Three expressly invoked Section 2 of the Sherman Act as the basis for its monopolization claims in its verified contention interrogatory responses. Nor does Facebook contest that state anticompetitive laws are not preempted by the Sherman Act. California is free to enact legislation prohibiting unilateral monopolistic conduct. It has not.

#### 2. Facebook's Removal Petition Was Timely, and the Basis for That Removal Need Not Be Restricted to Six4Three's January 12, 2017 Discovery Responses.

Six4Three's final argument in favor of remand is that the Court should ignore Six4Three's verified contention interrogatory response in which it asserts that Facebook's conduct violated Section 2 of the Sherman Act because it represented an "involuntary act." Or, in the alternative, the Court should look *only* to its contention interrogatory response, because it was the "trigger" for the 30-day removal clock. This argument fails for several reasons.

As it does throughout its Motion, Six4Three again rewrites Facebook's straightforward interrogatory seeking Six4Three's contentions regarding the unlawful prong of its Section 17200 claim as requesting "all *potential* violations that Facebook's conduct *may* have violated." Mot. at 15 (emphasis added). Six4Three goes so far as to claim that Facebook "deliberately attempted to bait [Six4Three] into triggering the § 1446(b)(3) clock through a mandatory, verified response to its served interrogatory." *Id.* Not so. Contention interrogatories are a common discovery mechanism by which a party may inquire about the opposing party's claims to prepare its case for summary judgment and trial. *See* Cal. Code Civ.

Proc. § 2030.010. Six4Three is in full control of its case and was under no obligation to list any federal antitrust provisions. For the same reason, Six4Three's reliance on the voluntary/involuntary rule is misplaced. Disclosing contentions to the other side in litigation is not an "involuntary" act, and Six4Three cites no caselaw to the contrary. Had Six4Three wanted to avoid federal jurisdiction, it could have elected not to pursue federal antitrust law. Instead, it has elected to affirmatively invoke and rely upon Section 2 of the Sherman Act in support of its unilateral monopoly allegations, and it must live with that decision. *See Nat'l Credit*, 2004 WL 1888769, at *5 ("Plaintiff has made a Sherman Act bed and must now lie in it.").

Alternatively, Six4Three argues that because its January 12, 2017 discovery responses triggered the removal clock, Facebook is precluded from pointing to any other pleadings or other documents to support federal jurisdiction. Mot. at 15. This makes no sense. Facebook and the Court can (and must) read Six4Three's most recent discovery responses in light of Six4Three's factual allegations in the Second Amended Complaint and prior discovery responses. Furthermore, simply because the Second Amended Complaint includes factual allegations that support federal-question jurisdiction does not mean that the § 1446(b)(3) clock began running as soon as Facebook was served. "[T]he information supporting removal in a copy of an amended pleading, motion, order or other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of removal under the second paragraph of section 1446(b)." *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) ("This clearer threshold promotes judicial economy. It should reduce 'protective' removals by defendants faced with an equivocal record."); *see also Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1089–90 (C.D. Cal. 2005).

### F. Facebook's Basis for Removal Is Objectively Reasonable.

Six4Three's Section 17200 claim necessarily relies on Section 2 of the Sherman Act, and so this case belongs in federal court. But even if the Court were inclined to grant Six4Three's Motion, fees are not appropriate. "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). Applying the caselaw cited herein (including, for example, the materially-indistinguishable *National Credit* decision) to Six4Three's allegations in the Second Amended

Complaint and its discovery responses, Facebook had, at a minimum, an objectively reasonable basis for removal. If anything, it is Six4Three's attempted reliance on facially-inapplicable state laws to avoid removal that lack an objectively reasonable basis.

## V.    CONCLUSION

For the foregoing reasons, Six4Three's motion for remand should be denied.


Dated:  February 6, 2017                                    DURIE TANGRI LLP


                                                   By:  _____*/s/ Sonal N. Mehta*_____
                                                                SONAL N. MEHTA

                                                   Attorneys for Defendant
                                                   Facebook, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2017 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Sonal N. Mehta*
SONAL N. MEHTA

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO PLAINTIFF SIX4THREE, LLC'S MOTION TO REMAND / CASE NO. 3:17-CV-00359-WHA