EXHIBIT 2

Basil P. Fthenakis, Esq. (88399)
CRITERION LAW
2225 E. Bayshore Road, Suite 200
Palo Alto, California 94303
Tel. (650) 352-8400
Fax. (650) 352-8408
bpf@criterionlaw.com

Of counsel:

David S. Godkin
James E. Kruzer
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA 02210
(617) 307-6100
godkin@birnbaumgodkin.com
kruzer@birnbaumgodkin.com

Attorneys for Plaintiff,
SIX4THREE, LLC, a Delaware
limited liability company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SIX4THREE, LLC, a Delaware limited liability company, | ) ) ) | Case No. |
| Plaintiff, | ) ) ) | COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF |
| v. | ) ) | |
| FACEBOOK, INC., a Delaware corporation, | ) ) ) | DEMAND FOR JURY TRIAL |
| Defendant. | ) ) ) | |

///

///

**PRELIMINARY STATEMENT**

Plaintiff six4three, LLC ("643" or "Plaintiff") brings this action for declaratory judgment and injunctive relief against Defendant Facebook, Inc. ("Facebook" or "Defendant").

**NATURE OF ACTION AND RELIEF SOUGHT**

1.     This is a civil action for declaratory and injunctive relief to vindicate the rights of 643 in connection with a gripe site maintained at FacebooksAppEconomy.com (the "Site"). FacebooksAppEconomy.com serves as an information resource for software developers, and in particular small businesses, ("Developers") that have been impacted by Facebook's unfair and deceptive practices. Small businesses that have been impacted can use the website to sign up for updates that follow the course of ongoing litigation and learn how they may protect their rights.

The Site also serves as a forum for increased public awareness of the harm caused by a lack of regulation in application economies. This is an issue of great importance to the public, the legal system and the global economy. Today, some of the largest economies in the world have their rules made and monitored by companies who also get to play in the game. This aligns incentives naturally toward anti-competitive behavior that detrimentally impacts both small businesses and consumers.

Facebook's application economy in particular has experienced a series of anti-competitive transfers of wealth. The Site focuses on a major one that impacted thousands of businesses, people and families: the closing of the Open Graph announced on April 30, 2014 in which Facebook gave itself a monopoly on building applications spanning numerous industries after promising for years that Developers could build the same applications and compete on neutral terms.

The Site offers a proposal for regulating Facebook's $227 billion economy in order to prevent events like this from happening again. The Site's proposal seeks to establish a basic set of rights and obligations for everyone participating in Facebook's application economy with the goal of minimizing perverse incentives towards anti-competitive behavior, which harms the public interest and threatens the long-term viability of the economy itself. In doing so, the Site seeks to engage the public and legal community not only to support the proposal but also to participate in its evolution.

2.      643 is an image recognition software startup that built an application integrated with Facebook's operating system, known as Facebook Platform. Like many Developers, 643 invested substantial sums of time, money and resources in building an application on Facebook Platform. In doing so, 643 reasonably relied upon years of explicit promises from Facebook regarding its commitment to neutrality, fairness and competition on Facebook Platform. On April 30, 2014, Facebook broke the promises it had made to Developers for many years and closed off their access to many types of applications that they had already made substantial investments in building and maintaining. Many companies were affected by this "bait and switch" tactic, and as noted by *The Wall Street Journal*, a substantial number of these companies were forced to shut down.[1]

3.      In April 2015, 643 filed a complaint in the Superior Court of California, County of San Mateo ("Ongoing Litigation"). In June 2016, the Court denied Facebook's demurrer as to four causes of action promulgated by 643, including a cause of action under California's Unfair Competition Law (UCL) and scheduled the matter for trial in Spring 2017. In a court-mandated mediation on 8 November 2016, 643 proposed that Facebook implement a series of policy

---

[1]  See: "Facebook's Restrictions on User Data Cast a Long Shadow," *The Wall Street Journal*, at http://www.wsj.com/articles/facebooks-restrictions-on-user-data-cast-a-long-shadow-1442881332

changes as part of a settlement proposal to promote fairness and competition in Facebook's application economy. Facebook refused to discuss these measures with 643. In an effort to raise awareness of this important issue of anti-competitive behavior in application ecosystems, 643 notified Facebook of the Site, including its intention to engage the developer community around this issue to garner support for its proposal.

4.     On 11 November 2016, Facebook sent a Notice of Facebook Trademark Infringement to 643, attached hereto as Exhibit A. In its Notice, Facebook claims that 643's registration and use of the Site violates the Lanham Act (15 U.S.C. § 1051 *et seq.*) and infringes and dilutes the famous Facebook trademark. The Notice requests that 643 remove the Site and let its domain registration lapse or Facebook "will have no choice but to pursue all available remedies against [643]". See Exhibit A.

5.     643 therefore brings this declaratory relief action to clarify the rights of the parties, and to refute the baseless assertions of trademark infringement and trademark dilution finally and definitively. Plaintiff seeks a declaratory judgment holding that the Site does not infringe any trademarks held by Defendant and is protected by the Fair Use Doctrine, California's Anti-SLAPP Law (Cal. Civ. Proc. Code § 425.16), and the First Amendment of the United States Constitution. 643 also seeks an injunction enjoining Defendant from any efforts to enforce any trademark in the Facebook trademark against 643 and the Site, including through the use of DMCA takedown notices, WIPO arbitration, or otherwise.

## THE PARTIES

6.     Plaintiff 643 is a Delaware limited liability company with a principal place of business at 535 Mission Street, 14th Floor, San Francisco, California.

7.     Upon information and belief, Defendant Facebook, Inc. is a Delaware Corporation with a principal place of business at One Hacker Way, Menlo Park, California.

**JURISDICTION AND VENUE**

8.     This is an action for declaratory judgment arising under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 15 U.S.C. §§ 1121, and 28 U.S.C. §§ 1331 and 1338 in that this Complaint raises federal questions arising under the Lanham Act, 15 U.S.C. § 1125, arising out of interstate commerce.

9.     This Court has personal jurisdiction over the Defendant because it resides in and is doing business in the State of California. Defendant has purposefully availed itself of the privilege of conducting activities in this State and the Northern District. Defendant has sold billions of dollars of advertising in this State. Further, Defendant has intentionally engaged in acts targeted at the Northern District. Plaintiff resides in this District and manages the domain and the Site in this District. Defendant's false assertions of infringement and dilution were and are directed at Plaintiff in this District.

10.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims has occurred and will continue to occur in the Northern District of California.

**FACTUAL ALLEGATIONS**

11.     Plaintiff 643 is an image recognition software company that has alleged it was harmed by Defendant Facebook's unfair and deceptive business practices. 643 invested in software that can automatically search and organize photos based on their contents in order to provide a more advanced photo sharing service for Facebook's users. For years, Facebook

promised Developers like 643 access to Facebook user photos so long as the user and their

friends permitted Developers' applications to access them. On April 30, 2014, Facebook

removed Developer access to Facebook user photos. As a result, Facebook became the only

company that could intelligently search and sort Facebook user photos. 643 was forced to shut

down its initial application and lost its investment of time, capital and labor in building its initial

application. Many other small businesses were similarly impacted by Facebook's decision to

monopolize this market.

      12.     To raise awareness of this issue of important public interest regarding the lack of

regulation in one of the largest economies in the world, 643 created the Site. The Site is

evidently a gripe site and is entirely non-commercial in nature. The domain of the Site,

FacebooksAppEconomy.com, clearly does <u>not</u> communicate any intent to sell any good or

service.

      13.     The main navigation of the Site includes a "thumbs-down" image and the words

"Our Demands" and "Join Litigation". The primary content above the fold on the site is a call to

action to Facebook Developers to join an effort to increase awareness among lawmakers and

regulators, like the Federal Trade Commission, of the importance of this issue to small

businesses and consumers. Users of the Site can send a letter to the Federal Trade Commission

(FTC) and California Attorney General. Further, users can watch a documentary video

recounting the history of Facebook Platform, including Facebook's "bait and switch" behavior

that has harmed thousands of businesses, people and families.

      14.     The Site does not offer any good or service for sale, has no ability to take

payment information, and does not include or display any advertisements. 643 has no intention

of selling the domain or the Site. 643 is not profiting and will not profit from the Site as it has no

commercial purpose whatsoever and this lack of commercial purpose is evident prior to even entering the Site. As such, it is hard to imagine how the Site could result in consumer confusion or dilute the Facebook's trademark.

15. Rather, the Site addresses a matter of great public interest. It is estimated that Facebook's application ecosystem produced $227 billion of economic activity and supported 4.5 million jobs in 2014 alone.[2] This application ecosystem currently operates in the absence of regulation. Facebook sets the rules of the game and is also one of its largest players. Facebook has taken advantage of this fact to effectuate large transfers of wealth from small businesses and consumers to itself by engaging in a series of "bait and switch" tactics that violate Section 5 of the Federal Trade Commission Act (FTCA) and California's Unfair Competition Law (UCL). Application ecosystems, or App Economies, are new and innovative industries critical to the global economy as a whole.

16. The rule of law has yet to catch up to these innovative economies, but many in the legal community have begun to take notice of the immense harm caused by a failure to regulate. As recently as 19 October 2016, Representative Henry C. "Hank" Johnson, the Ranking Member of the Antitrust Subcommittee of the House Judiciary Committee, called on the FTC to investigate anti-competitive behavior in App Economies. Johnson wrote: "It is critical that we promote and defend competition, even in markets that are highly innovative, to ensure that small entrants aren't squeezed out through needlessly restrictive conditions and policies…. I strongly encourage the FTC to give this issue the close attention that it deserves."[3] The Site serves a critical function in exposing how App Economies are manipulated in the absence of regulation.

---

[2] See: "New Deloitte Report Looks at Facebook's Impact on Global Economy, Jobs," 20 January 2015, at http://newsroom.fb.com/news/2015/01/new-deloitte-report-looks-at-facebooks-impact-on-global-economy-jobs/.
[3] See: "Johnson Leads Bipartisan Call for Investigation of Anticompetitive Practices in the App Marketplace," 19 October 2016, at https://hankjohnson.house.gov/media-center/press-releases/johnson-leads-bipartisan-call-investigation-anticompetitive-practices.

In doing so, the Site also identifies what we can do as a public and legal community to promote fairness and competition in these economies in order to ensure their long-term stability and protect businesses and consumers.

17.     Upon information and belief, Facebook sent its Notice of Trademark Infringement to 643 with full knowledge of the intended purpose of the Site, a purpose that is evidently both non-commercial in nature and of great importance to the business and legal communities. Facebook knew of this intended purpose because 643 communicated it to Facebook in advance of and during a court-mandated mediation on 8 November 2016. As such, Facebook's Notice was designed to create a "chilling effect" intended to suppress 643's free speech and activities in furtherance of a matter of great importance to the public. The First Amendment to the Constitution of the United States and California's Anti-SLAPP law (Cal. Civ. Proc. Code § 425.16) prohibit conduct intended to create this kind of "chilling effect" around issues of great public importance, particularly when the activities are in connection with a judicial proceeding and an overt campaign to raise awareness among lawmakers and regulators of a great injury to small software businesses founded and operating in the United States.  In an effort to prevent 643 from raising awareness of this issue, Facebook has lashed out and accused 643 of trademark infringement and dilution. There exists a justiciable controversy regarding 643's right to make a fair use of the Facebook trademark free of any allegations by Defendant that such conduct constitutes an infringement of any trademark owned by Defendant.

## **FIRST CLAIM FOR RELIEF**
### **(Declaratory Judgment – Non-Infringement of Trademark)**

18.     Plaintiff re-alleges and incorporates each and every foregoing paragraph as though fully set forth herein.

19.     An actual justiciable controversy exists as to whether the Site infringes any trademark owned by the Defendant.

20.     Plaintiff is entitled to a declaratory judgment that its use of the Facebook trademark is protected by the Fair Use Doctrine, California's Anti-SLAPP Law and the First Amendment of the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment – Non-Dilution of Trademark)

21.     Plaintiff re-alleges and incorporates each and every foregoing paragraph as though fully set forth herein.

22.     An actual justiciable controversy exists as to whether the Site dilutes any trademark owned by the Defendant.

23.     Plaintiff is entitled to a declaratory judgment that its use of the Facebook trademark is protected by the Fair Use Doctrine, California's Anti-SLAPP Law and the First Amendment of the Constitution of the United States.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment – Fair Use)

24.     Plaintiff re-alleges and incorporates each and every foregoing paragraph as though fully set forth herein.

25.     An actual justiciable controversy exists as to whether Plaintiff's use of any materials to which Defendant holds trademark or copyright is protected by the Fair Use Doctrine.

26.     Plaintiff is entitled to a declaratory judgment that its use of the Facebook trademark is protected by the Fair Use Doctrine, California's Anti-SLAPP Law and the First Amendment of the Constitution of the United States.

## PRAYER FOR RELIEF

Case No.          COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

WHEREFORE Plaintiff seeks judgment awarding it the following relief:

a)  An order declaring that Plaintiff does not infringe or dilute any valid trademark owned by Defendant;

b)  An order declaring that any alleged use by Plaintiff of any materials to which Defendant holds trademark or copyright is privileged under, and protected by, the Fair Use Doctrine;

c)  An order enjoining Defendant from asserting any alleged trademarks or copyrights against Plaintiff in connection with the Site and Site-related activities;

d)  An order awarding attorneys' fees, costs, and expenses incurred in connection with this action to Plaintiff;

e)  An order awarding such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

DATED: November 21, 2016                        CRITERION LAW

                                                BIRNBAUM & GODKIN

                                                By: _____
                                                    Basil P. Fthenakis, Esq.
                                                    David S. Godkin
                                                    James E. Kruzer
                                                    Attorneys for Plaintiff
                                                    Six4Three, LLC

Case No.            COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

9

**Exhibit <u>A</u>**

# FWD: facebooksappeconomy.com - Notice of Facebook Trademark Infringement [facebooksappeconomy .com@domainsbyproxy.com] (FROM: enforcement@mm-faceb ook.com)

To Whom It May Concern,

We are writing concerning your registration and use of the domain name facebooksappeconomy.com, which contains the famous Facebook trademark.

As you undoubtedly know, Facebook is the leading online social network service. Facebook adopted the name and trademark Facebook in February 2004 and, since that time, Facebook has actively used the Facebook name and trademark in connection with its online social network service, including maintaining the web site www.Facebook.com. The term Facebook is one of the most famous trademarks on the Internet. Facebook owns exclusive trademark rights to the Facebook name as a result of numerous trademark registrations in the United States and internationally, as well as related common law rights. Accordingly, Facebook enjoys broad trademark rights in its name.

Facebook has made a substantial investment in developing and providing its services. As a result of Facebook's pioneering efforts and devoting substantial effort and resources to providing only high quality services, the Facebook name and trademarks are widely known among the consuming public worldwide, and the name and trademarks embody substantial and valuable goodwill.

Accordingly, we were concerned when we learned of your registration and use of facebooksappeconomy.com. As we hope you can appreciate, protection of its trademarks is very important to Facebook. Your registration and use of facebooksappeconomy.com violates the Lanham Act (15 U.S.C. 1051 et seq.) because it infringes and dilutes the famous Facebook trademark.

Infringement occurs when a third party's use of a company's trademark (or a confusingly similar variation thereof) is likely to confuse consumers as to the affiliation, sponsorship or endorsement of the third party's services. Trademark dilution occurs when a third party's use of a variation of a company's trademark is likely to lessen the distinctiveness of the company's famous trademark.

We have filed several proceedings before the United Nation's World Intellectual Property Organization's arbitration panel. Facebook has prevailed in each case and the domain names at issue were all ordered to be transferred to Facebook. Facebook is concerned that your unauthorized use of the Facebook name may cause confusion as to whether you or your company's activities are authorized, endorsed or sponsored by Facebook when, in fact, they are not.

We understand that you may have registered facebooksappeconomy.com without full knowledge of the law in this area. However, Facebook is concerned about your use of the Facebook trademark in your domain name. As you may know, the Anticybersquatting Consumer Protection Act provides for serious penalties (up to $100,000 per domain name) against persons who, without authorization, use, sell, or offer for sale a domain name that infringes another's trademark.

While Facebook respects your right of expression and your desire to conduct business on the Internet, Facebook must enforce its own rights in order to protect its valuable and famous trademark. For these reasons, and to avoid consumer confusion, Facebook must insist that you immediately stop using facebooksappeconomy.com and disable any site available at that address. You should not sell, offer to sell, or transfer the domain name to a third party and should let the domain registration expire.

Please confirm in writing that you will agree to resolve this matter as requested. If we do not receive confirmation from you that you will comply with our request, we will have no choice but to pursue all available remedies against you.

Sincerely,

Ethel

JS-CAND 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| SIX4THREE, LLC, a Delaware limited liability company | FACEBOOK, INC., a Delaware corporation |

| **(b)** County of Residence of First Listed Plaintiff | San Francisco County |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | |

County of Residence of First Listed Defendant | San Mateo County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Basil P. Fthenakis, Esq (93299)
CRITERION LAW
2225 E. Bayshore Road, Suite 200
Palo Alto, California 94303
Tel. (650) 352-8400
Fax (650) 352-8408

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [X] 1 | Incorporated *or* Principal Place of Business in This State | [X] 4 | [X] 4 |
| Citizen of Another State | [X] 2 | [X] 2 | Incorporated *and* Principal Place of Business In Another State | [X] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [X] 3 | [X] 3 | Foreign Nation | [X] 6 | [X] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [X] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [X] 625 Drug Related Seizure of Property 21 USC § 881 | [X] 422 Appeal 28 USC § 158 | [X] 375 False Claims Act |
| [X] 120 Marine | [X] 310 Airplane | [X] 365 Personal Injury – Product Liability | [X] 690 Other | [X] 423 Withdrawal 28 USC § 157 | [X] 376 Qui Tam (31 USC § 3729(a)) |
| [X] 130 Miller Act | [X] 315 Airplane Product Liability | [X] 367 Health Care/ | | | [X] 400 State Reapportionment |
| [X] 140 Negotiable Instrument | [X] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [X] 410 Antitrust |
| [X] 150 Recovery of Overpayment Of Veteran's Benefits | [X] 330 Federal Employers' Liability | Product Liability | | [X] 820 Copyrights | [X] 430 Banks and Banking |
| [X] 151 Medicare Act | [X] 340 Marine | [X] 368 Asbestos Personal Injury Product Liability | | [X] 830 Patent | [X] 450 Commerce |
| [X] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [X] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [X] 840 Trademark | [X] 460 Deportation |
| [X] 153 Recovery of Overpayment of Veteran's Benefits | [X] 350 Motor Vehicle | [X] 370 Other Fraud | [X] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [X] 470 Racketeer Influenced and Corrupt Organizations |
| [X] 160 Stockholders' Suits | [X] 355 Motor Vehicle Product Liability | [X] 371 Truth in Lending | [X] 720 Labor/Management Relations | [X] 861 HIA (1395ff) | [X] 480 Consumer Credit |
| [X] 190 Other Contract | [X] 360 Other Personal Injury | [X] 380 Other Personal Property Damage | [X] 740 Railway Labor Act | [X] 862 Black Lung (923) | [X] 490 Cable/Sat TV |
| [X] 195 Contract Product Liability | [X] 362 Personal Injury - Medical Malpractice | [X] 385 Property Damage Product Liability | [X] 751 Family and Medical Leave Act | [X] 863 DIWC/DIWW (405(g)) | [X] 850 Securities/Commodities/ Exchange |
| [X] 196 Franchise | | | [X] 790 Other Labor Litigation | [X] 864 SSID Title XVI | [X] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [X] 791 Employee Retirement Income Security Act | [X] 865 RSI (405(g)) | [X] 891 Agricultural Acts |
| [X] 210 Land Condemnation | [X] 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | [X] 893 Environmental Matters |
| [X] 220 Foreclosure | [X] 441 Voting | [X] 463 Alien Detainee | | [X] 870 Taxes (U.S. Plaintiff or Defendant) | [X] 895 Freedom of Information Act |
| [X] 230 Rent Lease & Ejectment | [X] 442 Employment | [X] 510 Motions to Vacate Sentence | | [X] 871 IRS–Third Party 26 USC § 7609 | [X] 896 Arbitration |
| [X] 240 Torts to Land | [X] 443 Housing/ Accommodations | [X] 530 General | | | [X] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [X] 245 Tort Product Liability | [X] 445 Amer. w/Disabilities– Employment | [X] 535 Death Penalty | **IMMIGRATION** | | [X] 950 Constitutionality of State Statutes |
| [X] 290 All Other Real Property | [X] 446 Amer. w/Disabilities– Other | **Other:** | [X] 462 Naturalization Application | | |
| | [X] 448 Education | [X] 540 Mandamus & Other | [X] 465 Other Immigration Actions | | |
| | | [X] 550 Civil Rights | | | |
| | | [X] 555 Prison Condition | | | |
| | | [X] 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1  Original Proceeding
- [X] 2  Removed from State Court
- [X] 3  Remanded from Appellate Court
- [X] 4  Reinstated or Reopened
- [X] 5  Transferred from Another District *(specify)*
- [X] 6  Multidistrict Litigation–Transfer
- [X] 8  Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 2201 and 2202

Brief description of cause:
Declaratory and injunctive relief action to clarify the rights of the parties and to refute baseless assertions of trademark infringement and trademark dilution finally and definitively.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [X] Yes   [X] No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:

JUDGE

DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

*(Place an "X" in One Box Only)*   [X] SAN FRANCISCO/OAKLAND   [X] SAN JOSE   [X] EUREKA-MCKINLEYVILLE

DATE: 11/21/2016      SIGNATURE OF ATTORNEY OF RECORD: