# EXHIBIT 2

# Exhibit A

# EXHIBIT 1

Caleb Marker (SBN 269721)
 E-mail: caleb.marker@zimmreed.com
ZIMMERMAN REED, LLP
555 E. Ocean Blvd., Suite 500
Long Beach, CA 90802
(877) 500-8780 - Telephone
(877) 500-8781 - Facsimile

*Attorneys for Plaintiff (Additional Counsel Listed Below)*

ENDORSED

OCT - 6 2015

SUPERIOR COURT
OF CALIFORNIA
COUNTY OF SONOMA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SONOMA

ROBERT GARY LIPPINCOTT, JR., individually, and on behalf of all others similarly situated,

 *Plaintiff,*

v.

DirecTV, Inc.,
2230 East Imperial Highway
El Segundo, California 90245-3504,

 and

DirecTV Holdings LLC,
2230 East Imperial Highway
El Segundo, California 90245-3504,

 *Defendants.*

Case No. SCV-257854

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

**CLASS ACTION COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, by and through its attorneys, complain and allege as follows:

**INTRODUCTION**

1. Plaintiff brings this class action on behalf of a statewide Class of consumers who purchase DirecTV's NFL Sunday Ticket or NFL Sunday Ticket Max (collectively, "NFL Sunday Ticket") product.

CLASS ACTION COMPLAINT
1

2. Plaintiff and the Class, collectively described hereafter as "residential subscribers" or the "Class,"[1] herein challenge the unfair and unconscionable conduct of defendants DirecTV, Inc. and DirecTV Holdings LLC (collectively, "DirecTV" or "Defendants").

3. Football is one of the most popular sports in the United States. The most recent National Football League ("NFL") Super Bowl was viewed by 114.4 million viewers, making it the most watched television program ever. NFL football generates billions of dollars of broadcast revenue annually.

4. DirecTV's NFL Sunday Ticket product is exclusive product that allows viewers to viewers to watch Sunday afternoon NFL out-of-market live game video telecasts—telecasts of games played on Sundays and not within the subscriber's home television market.[2] DirecTV the sole presenter of such telecasts.

5. In or about October, 2014, DirecTV renewed its contract to be the exclusive marketer of out of market Sunday afternoon NFL games, agreeing to pay $1.5 billion annually to do so.

6. DirecTV has trademarked NFL Sunday Ticket. It is a separate product from the NFL game broadcasts aired by Fox, CBS, and NBC affiliates, or by ESPN or the NFL Network.

7. DirecTV's monopoly over the broadcast of out of market Sunday afternoon NFL games allows it to charge consumers unreasonably high, supra-competitive prices for its NFL Sunday Ticket programing within the State. With this power, DirecTV does, in fact, charge consumers unreasonably high, supra-competitive prices for this product.

8. DirecTV's NFL Sunday Ticket is the only choice available to consumers who wish to watch Sunday afternoon NFL out-of-market live game presentations. As DirecTV's website states, "Only DIRECTV brings you every out-of-market game live, every Sunday."

9. DirecTV's monopoly position serves no purpose other than to secure the ability to, and in fact impose, unreasonably high, supra-competitive pricing on Plaintiff and other residential subscribers.

---

[1] *See infra* Class definition, ¶ 44.
[2] The service is also subject to blackout restrictions, *see infra* Section B.

CLASS ACTION COMPLAINT
2

10. In other countries, such as Canada, NFL Sunday Ticket (or its equivalent) is available on a non-exclusive basis, through multi-channel video programing distribution ("MVPD"). Companies such as Access Communications; Bell TV; Cogeco Cable; EastLink Cable; MTS; Optik TV; Rogers Cable; SaskTel; Shaw Cable; Shaw Direct; TELUS; TELUS Satellite TV; Vidéotron; and Westman Communications all offer out of market, live Sunday afternoon NFL programming. In those areas where there is competition, NFL Sunday Ticket is competitively-priced.

11. DirecTV's unreasonably high, supra-competitive pricing of NFL Sunday Ticket in the State of California unjustly yields millions of dollars in excess profits for the company. But for DirecTV's abuse of its market power and monopolistic leverage, prices for the distribution of Sunday afternoon NFL out-of-market live game presentations, and prices for the DirecTV programming packages required to be purchased in conjunction with NFL Sunday Ticket, would be much lower.

12. Professional football is the only sport out of the 4 major sports in the United States (football, baseball, basketball, and hockey) to restrict the United States distribution of its out-of-market games to a single company. DirecTV charges disproportionately less for live out-of-market broadcasts of baseball, basketball, and hockey than for its NFL Sunday Ticket package, because there are multiple options for consumers for those other three products.

13. As one columnist stated, "[T]he Sunday Ticket cartel arrangement assures that only a small share of the American population can enjoy viewer choice on Sunday afternoons. The same voters who are taxed to subsidize the NFL, to the tune around $1 billion annually, are denied a choice about what games to watch."

14. Plaintiff and the Class's contracts with DirecTV are void as illegal contracts under the Consumers Legal Remedies Act ("CLRA") and the Unfair Competition Law ("UCL") because they contain unfair and unconscionable price provisions.

15. Plaintiff, on his own behalf and on behalf of the Class, seeks injunctive relief, compensatory damages, punitive damages, and restitution under § 1780 of the CLRA (Cal. Civ. Code § 1780), the UCL (Cal. Bus. & Prof. Code § 17200), and common law quasi-contract/unjust enrichment.

CLASS ACTION COMPLAINT
3

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over all causes of action and is a court of competent jurisdiction to grant the relief requested. Plaintiff's claims for violation of Cal. Civ. Code § 1780, California Business and Professions Code § 17200, and common law quasi-contract/unjust enrichment, arise under the laws of the State of California, are not preempted by federal law, do not challenge conduct within any federal agency's exclusive domain, and are not statutorily assigned to any other trial court.

17. The Defendants transact business in the State of California. The unlawful conduct occurred in substantial part within the State of California and was intended to and did substantially affect business and commerce within the State.

18. Plaintiff and all members of the Class reside in the State of California.

19. Venue is proper in this court pursuant to California Code of Civil Procedure §§ 395 and 395.5. Plaintiff is a resident of Sonoma County. Defendants conduct substantial business in the County of Sonoma. The injuries that have been sustained as a result of Defendants' illegal conduct occurred in part in the County of Sonoma.

## PARTIES

20. Plaintiff Robert Gary Lippincott, Jr. is, and at all relevant times described herein was, a resident of the City of Windsor, County of Sonoma, State of California.

21. Defendant DirecTV, Inc. is a California corporation with its principal place of business at 2230 East Imperial Highway, El Segundo, California.

22. Defendant DirecTV Holdings LLC is a Delaware Limited Liability Company with its principal place of business at 2230 East Imperial Highway, El Segundo, California. It is the U.S. operating arm of DirecTV, Inc.

## FACTUAL ALLEGATIONS

23. CBS, NBC, ESPN, and Fox Broadcasting all broadcast live, in market (games viewed by local fans where NFL teams are located) NFL games. DirecTV is the only company that provides broadcasting to consumers of Sunday afternoon NFL out-of-market live games.

24. Other television content, including other sports broadcasts and Sunday afternoon NFL games broadcast on local CBS and Fox Broadcasting affiliate networks, do not compete with Sunday afternoon NFL out-of-market live game video telecasts. NFL games broadcast locally are not interchangeable with the NFL Sunday Ticket service because the games presented through the NFL Sunday Ticket product are different games from those presented on local channels.

25. DirecTV distinguishes between residential and commercial subscribers and treats residential subscribers as a distinct group of purchasers of its NFL Sunday Ticket product.

26. Plaintiff purchased DirecTV's NFL Sunday Ticket service beginning in or about August 2010 and continuing until the present.

### A. DirecTV's Market Power

27. DirecTV has substantial market power because it is the only company with the rights to present Sunday afternoon NFL out-of-market live game telecasts, which it does through its NFL Sunday Ticket product.

28. The value of DirecTV's market power is illustrated by its recent merger with AT&T. The $48.5 billion merger deal contained a clause allowing AT&T to back out of the deal if DirecTV lost its exclusive rights to present Sunday afternoon NFL out-of-market live game video telecasts. That escape clause provided, "The parties also have agreed that in the event that DirecTV's agreement for the 'NFL Sunday Ticket' service is not renewed substantially on the terms discussed between the parties, the Company [AT&T] may elect not to consummate the Merger."

### B. In-Market Games

29. The NFL assigns broadcast territories to each member team and that team's television partners. Each team (including its television partners) does not compete in the other teams' territories for live, in-market broadcasts.

30. Because of this geographical market division, plaintiff and others similarly situated are limited, in the absence of a national telecast or a NFL Sunday Ticket subscription, to Sunday afternoon NFL game presentations provided by the subscriber's local team and/or the local team's television partners. In other words, if a resident of Sonoma County and fan of the San Francisco 49ers moved to Dallas, Texas, that fan could not watch the 49ers on Sunday afternoon unless they purchased NFL

CLASS ACTION COMPLAINT
5

Sunday Ticket from DirecTV or if the fan was lucky enough that one of the in-market networks chose to broadcast the 49ers game that week.

31. As a result of this market structure, during most weeks of the NFL season, only three of the Sunday afternoon games are presented in any given territory.

### C. Out-of-Market NFL Game Broadcasts

32. NFL Sunday Ticket is available by satellite exclusively through DirecTV. In 1994, DirecTV began to offer its subscribers exclusive access to presentations of Sunday afternoon NFL out-of-market games.

33. In 2014, DirecTV renewed its agreement to be the only purveyor of live, out of market, Sunday afternoon games. Under the current agreement, DirecTV will pay an average of $1.5 billion per year for eight years.

34. The out-of-market telecasts presented as part of DirecTV's NFL Sunday Ticket product are the live telecast feeds produced by CBS and Fox Broadcasting. DirecTV presents the live CBS and Fox feeds without alteration to its NFL Sunday Ticket subscribers. In other words, DirecTV combines the competitive efforts of CBS and Fox, combines them into one product, and delivers them through a single product only to consumers.

35. DirecTV has no competition in the market for Sunday afternoon NFL out-of-market live game broadcasts. Plaintiff and the Class are limited in their choices and pay higher prices because of DirecTV's abuse of its monopoly power.

36. DirecTV's monopolistic market position requires anyone wishing to view Sunday afternoon NFL out-of-market live games to install a DirecTV satellite dish, purchase a DirecTV programming subscription (with requisite 2-year minimum agreement), and separately purchase DirecTV's NFL Sunday Ticket product at the unreasonably high, supra-competitive price dictated by DirecTV.

37. DirecTV's conduct has no benefit to consumers or competition.

///

### D. Injury to California Residential Subscribers

38. Defendants' monopoly with respect to Sunday afternoon NFL out-of-market live games has resulted in California residential subscribers, including Plaintiff, paying higher prices for Sunday afternoon out-of-market NFL games than they otherwise would in a competitive market.

39. For access to NFL Sunday Ticket, DirecTV currently charges its residential subscribers, as listed on DirecTV's website, $251.94 per NFL season (each season lasts 17 weeks), for the basic package, or 353.94 per season for the "max" package, which includes additional features (two additional channels, the ability to watch on different devices, and the ability to watch shortened replays of games). These prices are supra-competitive and would be lower if there were competition.

40. Plaintiff and the Class have been, and continue to be, overcharged by DirecTV for the video presentation of Sunday afternoon out-of-market NFL games.

41. DirecTV abuses its monopoly power by leveraging its status as the sole provider of Sunday afternoon NFL out-of-market live game broadcasts to dictate supra-competitive, non-negotiable prices for its NFL Sunday Ticket service.

42. Dr. Roger G. Noll charted the price changes for NFL Sunday Ticket relative to price changes in out-of-market telecast packages for other sports, which are distributed on a non-exclusive basis. The chart below is illustrative of the disproportionality of NFL Sunday Ticket pricing compared to pricing for similar packages for other sports.



CLASS ACTION COMPLAINT
7

43. The contracts between residential subscribers and Defendants for NFL Sunday Ticket are contracts of adhesion. The one-sided price provisions of such contracts are of a non-negotiable nature. Consumers wishing to watch Sunday afternoon NFL out-of-market live game video presentations have no meaningful choice but to pay DirecTV's unfair and unreasonable prices for its NFL Sunday Ticket service.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action on behalf of himself and others similarly situated throughout the State of California pursuant to Code of Civil Procedure § 382. The proposed class (the "**Class**") consists of:

> All DirecTV residential subscribers residing in the State of California who purchased NFL Sunday Ticket from DirecTV, or its subsidiaries, at any time beginning four years prior to the filing of this complaint and until DirecTV's unfair and illegal conduct ends.

Excluded from the Class are DirecTV residential subscribers who do not reside in the State of California, government entities, Defendants, and any of Defendants' officers, directors, employees, parents, subsidiaries, affiliates, and co-conspirators.

45. **Ascertainability**. The members of the Class are easily ascertainable from records under the control of Defendants regarding DirecTV subscriptions, as well as through public notice.

46. **Numerosity**. The members of the Class are so numerous that their individual joinder is impracticable. On information and belief, the Class consist of hundreds of thousands, possibly millions, of members. The exact number and their identities are known to DirecTV.

47. **Commonality and Predominance**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. All members of the Class have been subject to the same conduct. The common legal and factual questions include, but are not limited to, the following:

///
///
///

a. Whether Defendants have obtained a monopoly with respect to Sunday afternoon out-of-market NFL game video presentations;

b. Whether Defendants' conduct constitutes unfair business acts and practices under the UCL;

c. Whether Defendants' conduct constitutes illegal business acts and practices under the UCL;

d. Whether the prices charged by Defendants for NFL Sunday Ticket service are unconscionable;

e. Whether Defendants were unjustly enriched at the expense of Plaintiff and the members of the Class;

f. Whether Defendants conduct caused injury to Plaintiff and the members of the Class;

g. The appropriate class-wide measure of damages.

48. **Typicality.** Plaintiff is a member of the proposed Class, and Plaintiff's claims are typical of the claims of the members of the proposed Class. Plaintiff, like all other members of the proposed Class, was a residential subscriber of DirecTV's NFL Sunday Ticket programming. Defendants have no defenses unique as to Plaintiff.

49. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is represented by counsel who are competent and experienced in the prosecution of class action litigation. Plaintiff's counsel are aware of no interests adverse or antagonistic to those of Plaintiff or the Class.

50. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Given the high cost of establishing that Defendants' conduct violated the UCL, CLRA, and common law, a class action is the only economically feasible means for Plaintiff and the Class to enforce their rights. Individual litigation would create a danger of inconsistent and/or contradictory judgments and increase the delay in resolving the controversy. The injury suffered by each Class member is relatively small compared to the burden and expense

CLASS ACTION COMPLAINT
9

associated with individual litigation of such a complex controversy. This class action presents no difficulties in management that would preclude maintenance as a class action.

## CLAIMS FOR RELIEF

### COUNT ONE

### Violation of the CLRA, Cal. Civ. Code § 1770.

51. Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

52. Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.

53. Defendants' above-described conduct constitutes illegal methods, acts, and practices under § 1770 of the CLRA.

54. Plaintiff and members of the Class entered into agreements with DirecTV containing unconscionable provisions—the price of DirecTV's NFL Sunday Ticket service.

55. Defendants abused their monopoly position, leaving Plaintiff and members of the Class with no available market alternatives in the market for Sunday afternoon NFL out-of-market live game video presentations.

56. The contracts entered into by Plaintiff and members of the Class were, in all material respects, identical, containing the same unconscionable price provisions. Defendants charge all subscribers the same price for its NFL Sunday Ticket service.

57. DirecTV offers its NFL Sunday Ticket product for a non-negotiable price. Subscribers wishing to watch Sunday afternoon NFL out-of-market live game video presentations must agree to a contract that is non-negotiable and drafted by Defendants.

58. Defendants, aware of their monopoly position with respect to Sunday afternoon NFL out-of-market live game video presentations, maliciously and oppressively abuse that position by imposing unreasonably high prices on its NFL Sunday Ticket subscribers.

59. The price charged by DirecTV for its NFL Sunday Ticket service is disproportionately and unreasonably high compared to out-of-market video presentation packages for other sports (and for the same sport in other countries) and compared to the prices a competitive market would produce.

60. Plaintiff and members of the Class have suffered substantial injury due to unreasonably high, supra-competitive prices for NFL Sunday Ticket. Defendants have abused their superior

1  bargaining position and have unjustly enriched themselves by means of their above-described
2  unconscionable contract provisions, extracting monopoly profits by charging Plaintiff and the Class
3  supra-competitive prices.

4      61.    Plaintiff, on behalf of himself and all others similarly situated, seeks equitable relief in
5  the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein.
6  As present, Plaintiff seeks only equitable relief from Defendant under the CLRA and not actual or
7  statutory damages.

8      62.    Plaintiff has already complied with California Civil Code section 1782(a) and served a
9  preliminary notice letter on October 6, 2015, before seeking damages under the CLRA. If Defendant
10 does not comply with the demands set forth in Plaintiff's notice, Plaintiff will amend this complaint to
11 seek damages.

12     63.    Attached hereto is an affidavit in compliance with California Civil Code section
13 1780(d).

## COUNT TWO

### Violation of the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

17     64.    Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.
18     65.    Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.
19     66.    Defendants' above-described conduct constitutes unfair business acts and practices, in
20 violation of §17200 of the UCL.

21     67.    Plaintiff and members of the Class have suffered substantial injury due to unreasonably
22 high, supra-competitive prices for NFL Sunday Ticket. Defendants have abused their superior
23 bargaining position to extract monopoly profits from Plaintiff and the Class.

24     68.    The substantial injury sustained by Plaintiff and the members of the Class is not
25 outweighed by any countervailing benefits to consumers or competition. But for DirecTV's abuse of
26 its monopoly position, consumers would pay lower prices to watch Sunday afternoon NFL out-of-
27 market live game video presentations.

69. Neither Plaintiff nor other members of the Class could have reasonably avoided substantial injury. Because of Defendants' abuse of their monopolistic position, the free market decisions of Plaintiff and members of the Class were unjustifiably hampered, leaving them with no meaningful choice in obtaining telecasts of Sunday afternoon NFL out-of-market live games.

70. Defendants also violated the UCL by violating the Consumers Legal Remedies Act, constituting illegal business acts under § 17200.

71. Defendants' illegal and unfair business acts and practices constitute unfair competition in violation of California Business and Professional Code §§ 17200, *et seq.*

72. Defendants have unjustly enriched themselves by means of their above-described illegal and unfair business acts, extracting monopoly profits by charging Plaintiff and the Class supra-competitive prices.

73. As a result of Defendants' violation of the UCL, Plaintiff and the Class are entitled to restitution in an amount to be determined at trial.

### COUNT THREE

### Quasi-Contract / Unjust Enrichment

74. Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

75. Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.

76. The express contracts entered into by Plaintiff and members of the Class with Defendants are void as illegal contracts pursuant to the UCL, Cal. Bus. & Prof. Code § 17200, and the CLRA, Cal. Civ. Code § 1780.

77. Plaintiff and the Class conferred upon Defendant an economic benefit in the form of monopoly profits resulting from Defendants' supra-competitive pricing of Sunday afternoon NFL out-of-market live game video presentations.

78. The price charged by DirecTV for its NFL Sunday Ticket service is disproportionately and unreasonably high compared to out-of-market video presentation packages for other sports (and for the same sport in other countries) and compared to the prices a competitive market would produce.

79. It would be inequitable and unjust for Defendants to be permitted to retain the benefits of their above-described illegal conduct. Plaintiff and the Class' free market decisions were unjustifiably hampered by Defendants' above-described conduct. Consumers wishing to watch Sunday afternoon NFL out-of-market live game video presentations had no available market alternatives.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A. That the Court certifies this action as a class action and appoints Plaintiff as named representative of the Class;

B. That the Court appoint Plaintiff's counsel as Class counsel;

C. That the Court adjudge and decree that Defendants' conduct, as alleged in this complaint, violates the CLRA, Cal. Civ. Code § 1780;

D. That the Court adjudge and decree that Defendants' conduct, as alleged in this complaint, violates the UCL, Cal. Bus. & Prof. Code § 17200;

E. That the Court adjudge and decree that Defendants have been unjustly enriched by Plaintiff and the members of the Class/ and or are liable under a theory of quasi-contract;

F. That the Court enjoin Defendants from further violations of the UCL;

G. That the Court enjoin Defendants from further violations of the CLRA;

H. That the Court award Plaintiff and the members of the Class restitution, as provided for under the UCL, including disgorgement of profits obtained by Defendants as a result of their illegal conduct;

I. That the Court award Plaintiff and the Class the costs of this action, including reasonable attorneys' fees as permitted by law;

J. That the Court award Plaintiff and members of the Class pre- and post-judgment interest at the highest rate allowed by law from and after the date of service of this Complaint;

K. That the Court order and award Plaintiff and members of the Class such other, further, or different relief as the case may require and the Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

ZIMMERMAN REED, LLP

Dated: October 6, 2015    By: _____
Caleb Marker (SBN 269721)
E-mail: caleb.marker@zimmreed.com
**ZIMMERMAN REED, LLP**
555 E. Ocean Blvd., Suite 500
Long Beach, CA 90802
(877) 500-8780 – Telephone
(888) 490-7750 – Facsimile

Brian C. Gudmundson, MN Bar. No.: 336695
E-mail: brian.gudmundson@zimmreed.com
Jason R. Lee, MN Bar. No. 396847
*Pending Admission* Pro Hac Vice
E-mail: jason.lee@zimmreed.com
**ZIMMERMAN REED, LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(612) 341-0400 - Telephone
(612) 341-0844 - Facsimile

Bradley C. Buhrow (SBN 283791)
E-mail: brad.buhrow@zimmreed.com
**ZIMMERMAN REED, LLP**
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
(480) 348-6400 – Telephone
(480) 348-6415 - Facsimile

Arthur M. Murray, LA Bar No.: 27694
*Pending Admission* Pro Hac Vice
E-mail: amurray@murray-lawfirm.com
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
(504) 525-8100 - Telephone
(504) 584-5249 - Facsimile

*Attorneys for Plaintiff*

## AFFIDAVIT OF CALEB MARKER

I, Caleb Marker, declare as follows:

1. I am an attorney with the law firm Zimmerman Reed, LLP, counsel for Plaintiff in this action. I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California. I make this declaration based on my research of public records, client communications, and also upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2. Based on my research of public records and personal knowledge, Plaintiff resides in Sonoma County, Defendant conducts business within Sonoma County, and Sonoma County is where a substantial number of the transactions giving rise to this complaint occurred.

I declare under penalty of perjury this 6th day of October, 2015 in Long Beach, California, that the foregoing is true and correct.

_____
CALEB MARKER